EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1 A+ Pro Recovery an Towing, LLC

Debtor 2 (Spouse, if filing)

United States Bankruptcy Court for the: Southern District of Texas

Case number 22-10132

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

A-Pro Towing & Recovery LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

A-Pro Towing & Recovery LLC
Name

2216 Padre Blvd, Suite B-185
Number Street

South Padre Island, TX 78587
City State ZIP Code

Contact phone

Contact email

**Where should payments to the creditor be sent?** (if different)

Name

Number Street

City State ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes. Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**
   ☒ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____________

7. **How much is the claim?** $2,733,207.41. **Does this amount include interest or other charges?**
   ☐ No
   ☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   Breach of contract, fraud, conversion

9. **Is all or part of the claim secured?**
   ☐ No
   ☒ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   ☐ Motor vehicle
   ☒ Other. Describe: Described in Security Agreement contained in Exhibit 1

   **Basis for perfection:** UCC-1
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:** $ 1,754,000.00
   **Amount of the claim that is secured:** $ 1,754,000.00
   **Amount of the claim that is unsecured:** $ 979,207.41 (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:** $ 2,733,207.41

   **Annual Interest Rate** (when case was filed) 5 %
   ☒ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**
    ☒ No
    ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________

11. **Is this claim subject to a right of setoff?**
    ☒ No
    ☐ Yes. Identify the property: ____________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 11/8/22
MM / DD / YYYY

[signature]
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Eduardo Pena
First name / Middle name / Last name

Title: Managing Member

Company: A- Pro Towing and Recovery, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 2216 Padre Blvd., Suite B-15
Number / Street

South Padre Island, TX 78597
City / State / ZIP Code

Contact phone: ______ Email: ______

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**UNANIMOUS WRITTEN CONSENT**
**OF**
**THE MEMBERS**
**OF**
**A+ PRO RECOVERY AND TOWING LLC**

Pursuant to Sections 6.201 and 101.359 of the Texas Business Organizations Code, the undersigned, being all of the Members of A+ PRO RECOVERY AND TOWING LLC, a Texas limited liability company (the "**Company**"), hereby adopt the following resolutions in lieu of holding a meeting of the Members.

**WHEREAS**, the members of the Company deem it to be in the best interests of the Company to enter into that certain Asset Purchase Agreement by and between A-Pro Towing & Recovery, LLC (as seller) and the Company (as buyer) (the "**Asset Purchase Agreement**"), pursuant to which the seller will sell, convey and transfer all or substantially all of its assets (the "**Asset Sale**") to the Company.

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that the form, terms and provisions of the Asset Purchase Agreement, including all exhibits and schedules attached thereto, be, and hereby are, approved;

**RESOLVED**, that the members of the Company (each such person, an "**Authorized Person**") be, and each of them hereby is, authorized and empowered to execute and deliver the Asset Purchase Agreement, including all exhibits and schedules attached thereto, in the name and on behalf of the Company with such additions, deletions or changes therein (including, without limitation, any additions, deletions or changes to any schedules or exhibits thereto) as the Authorized Person executing the same shall approve (the execution and delivery thereof by the Authorized Person to be conclusive evidence of his or her approval of any such additions, deletions or changes);

**RESOLVED**, that the Company be, and hereby is, authorized and empowered to perform all of its obligations under the Asset Purchase Agreement, including but not limited to, the Asset Sale;

**RESOLVED**, that each Authorized Person be, and hereby is, authorized and empowered to take all such further action and to execute and deliver all such further agreements, certificates, instruments and documents, in the name and on behalf of the Company; to pay or cause to be paid all expenses; to take all such other actions as the Authorized Person shall deem necessary, desirable, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by and the intent and purposes of the foregoing resolutions; and

**RESOLVED**, that the omission from these resolutions of any agreement or other arrangement contemplated by any of the agreements or instruments described in the foregoing resolutions or any action to be taken in accordance with any requirements of any of the agreements or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Persons to take all actions necessary, desirable, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by and the intent and purposes of the foregoing resolutions.

Dated to be effective on **December 24, 2019**.

**MEMBERS:**

**JODY MCINTYRE**

By: ______________________
Jody McIntyre

**ERIK MACKENZIE HAGER**

By: ______________________
Erik Mackenzie Hager

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# UNANIMOUS WRITTEN CONSENT
# OF
# THE SOLE MEMBER
# OF
# A-PRO TOWING & RECOVERY, LLC

Pursuant to Sections 6.201 and 101.359 of the Texas Business Organizations Code, the undersigned, being the sole Member of A-PRO TOWING & RECOVERY, LLC, a Texas limited liability company (the "**Company**"), hereby adopt the following resolutions in lieu of holding a meeting.

**WHEREAS**, the Member of the Company deems it to be in the best interests of the Company to enter into that certain Asset Purchase Agreement by and between Company (as seller) and A+ Pro Recovery and Towing LLC (as buyer) (the "**Asset Purchase Agreement**"), pursuant to which the Company will sell, convey and transfer all or substantially all of its assets (the "**Asset Sale**") to the buyer.

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that the form, terms and provisions of the Asset Purchase Agreement, including all exhibits and schedules attached thereto, be, and hereby are, approved;

**RESOLVED**, that **Eduardo Peña**, as **Manager** of the Company, is authorized and empowered to execute and deliver the Asset Purchase Agreement, including all exhibits and schedules attached thereto, in the name and on behalf of the Company with such additions, deletions or changes therein (including, without limitation, any additions, deletions or changes to any schedules or exhibits thereto) as the Manager shall approve (the execution and delivery thereof by the Manager to be conclusive evidence of his approval of any such additions, deletions or changes);

**RESOLVED**, that the Company be, and hereby is, authorized and empowered to perform all of its obligations under the Asset Purchase Agreement, including but not limited to, the Asset Sale;

**RESOLVED**, that the Manager is authorized and empowered to take all such further action and to execute and deliver all such further agreements, certificates, instruments and documents, in the name and on behalf of the Company; to pay or cause to be paid all expenses; to take all such other actions as the Manager shall deem necessary, desirable, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by and the intent and purposes of the foregoing resolutions; and

**RESOLVED**, that the omission from these resolutions of any agreement or other arrangement contemplated by any of the agreements or instruments described in the foregoing resolutions or any action to be taken in accordance with any requirements of any of the agreements or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the Manager to take all actions necessary, desirable, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by and the intent and purposes of the foregoing resolutions.

Dated to be effective on **December 24, 2019.**

**MEMBER:**

**JOANNA PEÑA**

By: ______________________
Joanna Peña, Member

REDACTED COPY - PAGES 67-71 REMOVED

REDACTED COPY - PAGES 67-71 REMOVED

1HIH4862

**TEXAS REGIONAL BANK**
The people you know.™
P.O. BOX 5555, McALLEN, TX 78502 • 956-682-2265

25-0000163

ERIK MACKENZIE HAGER
REMITTER

DATE 12/24/2019

PAY TO THE ORDER OF A-PRO TOWING AND RECOVERY

$ [redacted] $9,900.00

**Nine Thousand Nine Hundred and 00/100*****************************************
**

ISSUER

CASHIER'S CHECK

NOTICE TO CUSTOMER: THE PURCHASE OF AN INDEMNITY BOND, AND A 90 DAY WAITING PERIOD WILL BE REQUIRED BEFORE ANY CASHIER'S CHECK ON THIS BANK WILL BE RE-PLACED OR REFUNDED IN THE EVENT IT IS LOST, MISPLACED OR STOLEN.

TWO SIGNATURES REQUIRED $10,000.00 AND OVER

MP
AUTHORIZED SIGNATURE

⑈2500001 63⑈ ⑆114917335⑆ ⑈9900101⑈

Security Features Included. Details on Back.

---

**Bank of America**

Cashier's Check

No. 1564407630

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Void After 90 Days

30-1/1140
NTX

Date 12/24/19 01:13:25 PM

BOCA CHICA
0004 0003115 0044

Pay BANK OF AMERICA 13100 00 ONE THREE ONE ZERO ZERO CTSCTS

**$13,100.00**

**Thirteen Thousand One Hundred and 00/100 Dollars**

To The Order Of A-PRO TOWING AND RECOVERY

00-53-3364B 11-2010

Remitter (Purchased By): ERIK M HAGER

Bank of America, N.A.
SAN ANTONIO, TX

AUTHORIZED SIGNATURE

COPYBAN CAPTURE® ANTI-FRAUD PROTECTION

⑈1564407630⑈ ⑆114000019⑆ 00164100376 3⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK. EXHIBIT 1 HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

EXHIBIT 1

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# NON-COMPETE AGREEMENT

This NON-COMPETE AGREEMENT (hereinafter referred to as the "**Agreement**") is entered into on December 24, 2019 by and between A+ Pro Recovery and Towing LLC, a Texas limited liability company (hereinafter, "**Promisee**," i.e. the Party receiving the promises herein), and A-Pro Towing & Recovery, LLC, a Texas limited liability company, Eduardo Pena, and Joanna Pena, (hereinafter, "**Promisors**," i.e. the Party making the promises herein) (Promisee and Promisors collectively the "**Parties**" and each a "**Party**").

**1. Definitions**. For purposes of this Agreement, the following terms are defined as follows:

**a.** "**Current Customers**" means any firm, partnership, corporation, and/or any other entity and/or person that purchased or purchases from the Promisee any of its products or services.

**b.** "**Prospective Customers**" means any firm, partnership, corporation, and/or any other entity and/or person reasonably expected by the Promisee to purchase from the Promisee any of its products or services.

**c.** "**Vendor**" means any individual or entity that provides goods or services to the Promisee.

**2. Consideration**. In the consideration for Promisors' business relationship with Promisee and/or other benefits conferred, the continuing business relationship between the Parties, the mutual covenants herein, and other good and valuable consideration, the receipt, and sufficiency of which is hereby acknowledged, Promisors agree as follows:

**a. Non-Competition**. During Promisors' employment, contract, or other business relationship with Promisee, Promisors shall not in any capacity, whether as an employee, officer, director, partner, manager, consultant, agent, or owner (other than a minority shareholder or other equity interest of not more than 1% of a company whose equity interests are publicly traded on a nationally recognized stock exchange or over-the-counter), directly or indirectly advise, manage, render, or perform services to or for any person or entity, including on Promisors' own behalf, which is engaged in a business competitive to that of Promisee within a 50-mile radius of the city of South Padre Island, TX.

**b. Non-Solicitation of Current Customers, Prospective Customers, and Vendors**. During Promisors' employment, contract, or other business relationship with Promisee, Promisors shall not, directly or indirectly, on their own behalf or

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

on behalf of or in conjunction with any person or legal entity, solicit or attempt to solicit any business from any Current Customer, Prospective Customer, or Vendor, except with Promisee's permission and to benefit Promisee during the Parties' business relationship.

c. **Non-Solicitation of Employees, Contractors, or Agents**. During Promisors' employment, contract, or other business relationship with Promisee, Promisors shall not, directly or indirectly, on their own behalf or on behalf of or in conjunction with any person or legal entity, recruit, solicit, or induce, or attempt to recruit, solicit, or induce, any non-clerical employee, contractor, or agent of Promisee to terminate or diminish his or her relationship with Promisee, except with Promisee's permission and to benefit Promisee during the Parties' business relationship.

d. **No Undue Burden**. Promisors acknowledge that: (i) this Agreement has been specifically bargained between the Parties and reviewed by Promisors, (ii) Promisors have had an opportunity to obtain legal counsel to review this Agreement, and (iii) the covenants made by and duties imposed upon Promisors hereby are fair, reasonable, and minimally necessary to protect the legitimate business interests of Promisee, and such covenants and duties will not place an undue burden upon Promisors' livelihood in the event of termination of Promisors' employment, contract, or other business relationship by Promisee and the strict enforcement of the covenants contained herein.

e. **Relationship of the Parties**. Promisors acknowledge and agree that nothing in this Agreement is a guarantee or assurance of a continued business relationship for any specific period of time.

3. **Governing Law**. The Parties agree and acknowledge that all provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

4. **Survivability**. This Agreement will not survive the termination, for any reason, of Promisors' employment, contract, or other business relationship with Promisee.

5. **Entire Agreement**. This Agreement represents the entire agreement between Promisee and Promisors and may not be modified, changed, or altered by any promise or statement by Promisee other than in writing signed by Promisors and an authorized representative of Promisee.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

6. **Waiver**. The waiver by Promisee of a breach of any provision of this Agreement by Promisors shall not be considered as a waiver of rights with respect to any subsequent breach by Promisors.

7. **Successors and Assigns**. This Agreement binds and benefits the heirs, successors, and assignees of the Parties.

8. **Equitable Relief and Remedies**. Promisors acknowledge that any breach of this Agreement will cause substantial and irreparable harm to Promisee for which monetary damages would be an inadequate remedy. Accordingly, Promisee shall in any such event be entitled to seek injunctive and other forms of equitable relief to prevent such breach and the prevailing Party shall be entitled to recover from the other: the prevailing Party's costs (including, without limitation, reasonable attorney's fees) incurred in connection with enforcing this Agreement, in addition to any other rights or remedies available at law, in equity, or by statute.

9. **Third-Party Claims.** Should either Party materially breach any part of this Agreement, that breaching Party shall indemnify, hold harmless, and defend the non-breaching Party, including its employees, agents, and other representatives against all third-party claims, liabilities, and expenses, including reasonable attorney's fees and costs, that result from such material breach.

10. **Arbitration Agreement**. The parties acknowledge and agree that they are bound by their arbitration obligations under Exhibit A attached hereto, which the Parties also hereby agree to execute contemporaneously and is an integral part of this Agreement.

11. **Construction**. The terms used in this Agreement shall be construed in both the feminine and masculine, and both single and plural, wherever applicable.

12. **Severability**. The Parties have attempted to limit the non-compete provision so that it applies only to the extent necessary to protect legitimate business and property interests. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, that provision shall be considered removed from this Agreement; however, the remaining provisions shall continue to be valid and enforceable according to the intentions of the Parties. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

13. **Notice**. Any notice required or permitted under this Agreement shall be in writing and delivered in accordance with the provisions of this paragraph. Such notice, if delivered by electronic mail, shall be delivered to Promisee at mail@spi-tow.com or to Promisors at epena75@me.com . Such notice, if delivered by personal delivery or U.S. mail, shall be delivered to the Parties at the addresses specified below:

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**PROMISEE ADDRESS**
2216 PADRE BLVD B 453
SOUTH PADRE ISLAND, TX 78597

**PROMISOR ADDRESS**
2216 PADRE BLVD B 185
SOUTH PADRE ISLAND, TX 78597

14. **Counterparts; Electronic Signature.** This Agreement may be executed in counterparts, including by fax, email, or other facsimile, each an original but all considered part of one Agreement. Electronic signatures placed upon counterparts of this Agreement by a Party or their approved agent shall be considered valid representations of that Party's signature.

**Promisors acknowledge that they have carefully read and understood the provisions of this Agreement and understand that they have the right to seek independent advice at their expense or to propose modifications prior to signing the Agreement and have negotiated proposed modifications to the extent they deem necessary. Nothing contained in this Agreement creates a contractual right to a continued employment, contract, or business relationship for a definite term. Promisors represent and warrant that they have entered into this Agreement voluntarily and after consulting with whomsoever they so wished.**

**[SIGNATURE PAGE FOLLOWS]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**PROMISORS**

Signed: DocuSigned by: [signature] EEA482A702CF4A4... ______ Date: 12/24/2019 ______, 20____

Name: Eduardo Pena

Title: Manager

Signed: /S/ JOANNA PENA 12/24/19 Date: ______, 20____

INDIVIDUALLY

Name: ______

Title: ______

DocuSigned by: [signature] EEA482A702CF4A4...

Eduardo Pena

INDIVIDUALLY

**PROMISEE**

Signed: [signature] Date: 12/24, 2019

Name: Jody S McIntyre

Title: Principal Managing member

Signed: [signature] Date: 12/24, 2019

Name: Erik W. Hager

Title: Managing member

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# EXHIBIT A - ARBITRATION AGREEMENT

1. In consideration of the benefits described in the NON-COMPETE AGREEMENT (the **"Agreement"**) entered into on January 1, 2020 by and between A+ Pro Recovery and Towing LLC, a Texas limited liability company (hereinafter, "**Promisee**," i.e. the Party receiving the promises herein), and A-Pro Towing & Recovery, LLC, a Texas limited liability company, Eduardo Pena, and Joanna Pena (hereinafter, "**Promisors**," i.e. the Party making the promises herein) (Promisee and Promisors collectively the "**Parties**" and each a "**Party**"), along with Promisee's subsidiaries, parents, joint ventures, affiliated entities, and including its successors and assigns or any such related entities on the same date hereto and into which this Exhibit A is incorporated, **Promisee and Promisors hereby agree that any controversy or claim arising under federal, state, and local statutory or common or contract law between Promisee and Promisors involving the construction or application of any of the terms, provisions, or conditions of the Agreement, including, but not limited to, breach of contract, tort, and/or fraud, must be submitted to arbitration on the written request of either Party served on the other. Arbitration shall be the exclusive forum for any such controversy.**

2. If any claim or cause of action at law or in equity is filed by either Party in any state or federal court which results in arbitration being compelled and/or the claim or cause of action being dismissed, stayed, and/or removed to arbitration pursuant to this Agreement, the Party who instituted the claim or cause of action in state or federal court, either wholly or in substantial part, shall, at the discretion of the arbitrator(s), reimburse the respondent for its reasonable attorney's fees, costs, and necessary disbursements to the extent permitted by law, in addition to any other relief to which it may be entitled, related to the state or federal court claim or action.

3. Including the initial filing fee, the cost of arbitration shall be borne by the claimant. If an arbitration or any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing Party, either wholly or in substantial part, shall, at the discretion of the Arbitrator, be entitled to its reasonable attorney's fees, costs, and necessary disbursements to the extent permitted by law, in addition to any other relief to which it may be entitled.

4. All claims shall be submitted to and administered by the American Arbitration Association's Case Management Center located closest to Promisee's principal place of business.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**5.** The arbitration shall comply with and be governed by the American Arbitration Association's Commercial Arbitration Rules (hereinafter referred to as the **"Rules"**) effective as of the execution date below, to the extent such Rules are not contrary to the expressed provisions of this Agreement. The Parties also agree that the American Arbitration Association's Optional Rules for Emergency Measures of Protection (hereinafter referred to as the **"Emergency Rules"**) shall apply to proceedings brought by either Party. The Rules and Emergency Rules can be found at the American Arbitration Association's website by following the link at: https://www.adr.org. You acknowledge that you should read these Rules and Emergency Rules and that it is your responsibility to be familiar with them prior to signing the Agreement. If you are unable to access the Rules and/or Emergency Rules at the above website, you can request a copy of them from a Promisee official prior to signing the Agreement.

**6.** The Parties agree and acknowledge that all provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas exclusively and without reference to principles of conflict of laws. The Federal Arbitration Act (hereinafter referred to as the **"FAA"**) will supersede state laws to the extent inconsistent. Any claim involving the construction or application of this Agreement must be submitted to arbitration within the statute of limitations period for such claim under Texas state law and shall be dismissed if the statute of limitations period is not met. The arbitrator(s) shall have no authority to apply the law of any other jurisdiction.

**7.** Any dispute shall be heard and determined by one arbitrator, unless both Parties mutually consent in writing signed by Recipient and an authorized representative of Discloser to a panel of three (3) arbitrators. Unless both Parties mutually consent otherwise, the Parties agree and request that the arbitrator(s) issue a reasoned award in accordance with Commercial Arbitration Rule R-42(b).

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

**[SIGNATURE PAGE FOLLOWS]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**PROMISEE**

Signed: [signature] Date: 12/24, 20 19

Name: Jody S. McIntyre

Title: Managing Member

Signed: [signature] Date: 12/24, 20 19

Name: Erik Hagr

Title: managing member

**PROMISORS**

Signed: DocuSigned by: [signature] EEA482A702CF4A4... Date: 12/24/2019, 20

Name: Eduardo Pena

Title: Manager

Signed: /S/ JOANNA PENA 12/24/19 Date: ________, 20____

INDIVIDUALLY

Name: ____________

Title: ____________

DocuSigned by: [signature] EEA482A702CF4A4...

Eduardo Pena

INDIVIDUALLY

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# ASSET PURCHASE AGREEMENT

by and between

**A-PRO TOWING & RECOVERY, LLC**

**as Seller**

and

**A+ PRO RECOVERY AND TOWING LLC**

**as Buyer**

dated as of

December 24, 2019

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## TABLE OF CONTENTS

ASSET PURCHASE AGREEMENT ........ 3
ARTICLE I DEFINITIONS ........ 3
ARTICLE II PURCHASE AND SALE ........ 7
ARTICLE III CLOSING ........ 11
ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLER ........ 12
ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER ........ 15
ARTICLE VI COVENANTS ........ 17
ARTICLE VII CONDITIONS TO CLOSING ........ 19
ARTICLE VIII INDEMNIFICATION ........ 20
ARTICLE IX TERMINATION ........ 23
ARTICLE X MISCELLANEOUS ........ 24

REDACTED COPY - PAGES 67-71 REMOVED

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of December 24, 2019, is entered into between A-Pro Towing & Recovery, LLC, a Texas limited liability company ("**Seller**") and A+ Pro Recovery and Towing LLC, a Texas limited liability company ("**Buyer**").

## RECITALS

WHEREAS, Seller is engaged in the business of providing vehicle towing, storage, and roadside assistance services (collectively, the "**Business**"); and

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, substantially all the assets and liabilities of the Business, subject to the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

The following terms have the meanings specified or referred to in this ARTICLE I:

"**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Agreement**" has the meaning set forth in the preamble.

"**Allocation Schedule**" has the meaning set forth in Section 2.06.

"**Assigned Contracts**" has the meaning set forth in Section 2.01(c).

"**Assignment and Assumption Agreement**" has the meaning set forth in Section 3.02(a)(ii).

"**Assumed Liabilities**" has the meaning set forth in Section 2.03.

"**Bill of Sale**" has the meaning set forth in Section 3.02(a)(i).

"**Books and Records**" has the meaning set forth in Section 2.01(j).

"**Business**" has the meaning set forth in the recitals.

"**Business Day**" means any day except Saturday, Sunday or any other day on which commercial banks located in South Padre Island, Texas are authorized or required by Law to be closed for business.

"**Buyer**" has the meaning set forth in the preamble.

"**Closing**" has the meaning set forth in Section 3.01.

REDACTED COPY - PAGES 67-71 REMOVED

**"Closing Date"** has the meaning set forth in Section 3.01.

**"Code"** means the Internal Revenue Code of 1986, as amended.

**"Commercial Sublease Agreement"** has the meaning set forth in Section 3.02(a)(v).

**"Confidentiality Agreement"** means the Confidentiality Agreement, of even date herewith, between Buyer and Seller.

**"Contracts"** means all legally binding written contracts, leases, mortgages, licenses, instruments, notes, commitments, undertakings, indentures and other agreements.

**"DBAs"** means (i) "Paradise Towing & Recovery", and (ii) "Isla Towing".

**"Direct Claim"** has the meaning set forth in Section 8.05(c).

**"Disclosure Schedule"** means the Disclosure Schedule delivered by Seller and Buyer concurrently with the execution and delivery of this Agreement.

**"Dollars or $"** means the lawful currency of the United States.

**"Drop Dead Date"** has the meaning set forth in Section 9.01(b)(i).

**"Encumbrance"** means any lien, pledge, mortgage, deed of trust, security interest, charge, claim, easement, encroachment or other similar encumbrance.

**"Environmental Claim"** means any Governmental Order, action, suit, claim, investigation or other legal proceeding by any Person alleging liability of whatever kind or nature (including liability or responsibility for the costs of enforcement proceedings, investigations, cleanup, governmental response, removal or remediation, natural resources damages, property damages, personal injuries, medical monitoring, penalties, contribution, indemnification and injunctive relief) arising out of, based on or resulting from: (a) the presence, Release of, or exposure to, any Hazardous Materials; or (b) any actual or alleged non-compliance with any Environmental Law.

**"Environmental Law"** means any applicable Law, and any Governmental Order or binding agreement with any Governmental Authority: (a) relating to pollution (or the cleanup thereof) or the protection of natural resources, endangered or threatened species, human health or safety, or the environment (including ambient air, soil, surface water or groundwater, or subsurface strata); or (b) concerning the presence of, exposure to, or the management, manufacture, use, containment, storage, recycling, reclamation, reuse, treatment, generation, discharge, transportation, processing, production, disposal or remediation of any Hazardous Materials. The term "Environmental Law" includes, without limitation, the following (including their implementing regulations and any state analogs): the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 et seq.; the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §§ 6901 et seq.; the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977, 33 U.S.C. §§ 1251 et seq.; the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001 et seq.; the Clean Air Act of 1966, as amended by the Clean Air Act Amendments of 1990, 42 U.S.C. §§ 7401 et seq.; and the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §§ 651 et seq.

**"Environmental Notice"** means any written directive, notice of violation or infraction, or notice respecting any Environmental Claim relating to actual or alleged non-compliance with any Environmental Law.

REDACTED COPY - PAGES 67-71 REMOVED

"**Excluded Assets**" has the meaning set forth in Section 2.02.

"**Excluded Liabilities**" has the meaning set forth in Section 2.04.

"**Financial Statements**" has the meaning set forth in Section 4.04.

"**GAAP**" means United States generally accepted accounting principles in effect from time to time.

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

"**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

"**Hazardous Materials**" means: (a) any material, substance, chemical, waste, product, derivative, compound, mixture, solid, liquid, mineral or gas, in each case, whether naturally occurring or man-made, that is hazardous, acutely hazardous, toxic, or words of similar import or regulatory effect under Environmental Laws; and (b) any petroleum or petroleum-derived products, radon, radioactive materials or wastes, asbestos in any form, lead or lead-containing materials, urea formaldehyde foam insulation and polychlorinated biphenyls.

"**Indemnified Party**" has the meaning set forth in Section 8.05.

"**Indemnifying Party**" has the meaning set forth in Section 8.05.

"**Intellectual Property**" means any and all of the following arising pursuant to the Laws of any jurisdiction throughout the world: (a) trademarks, service marks, trade names, and similar indicia of source of origin, all registrations and applications for registration thereof, and the goodwill connected with the use of and symbolized by the foregoing; (b) copyrights and all registrations and applications for registration thereof; (c) trade secrets and know-how; (d) patents and patent applications; (e) internet domain name registrations; and (f) other intellectual property and related proprietary rights.

"**Intellectual Property Agreements**" means all licenses, sublicenses and other agreements by or through which other Persons grant Seller or Seller grants any other Persons any exclusive or non-exclusive rights or interests in or to any Intellectual Property that is used exclusively in the Business.

"**Intellectual Property Assets**" means all Intellectual Property that is owned by Seller and exclusively used in connection with the Business as set forth on Section 4.10(a) of the Disclosure Schedule.

"**Intellectual Property Registrations**" means all Intellectual Property Assets that are subject to any issuance, registration, application or other filing by, to or with any Governmental Authority or authorized private registrar in any jurisdiction, including registered trademarks, domain names, and copyrights, issued and reissued patents and pending applications for any of the foregoing.

"**Inventory**" has the meaning set forth in Section 2.01(b).

"**Knowledge of Seller or Seller's Knowledge**" or any other similar knowledge qualification, means the actual knowledge of those persons listed on Section 1.01(b) of the Disclosure Schedule.

"**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

"**Leased Real Property**" has the meaning set forth in Section 4.09(b).

"**Leases**" has the meaning set forth in Section 4.09(b).

"**Losses**" means actual out-of-pocket losses, damages, liabilities, costs or expenses, including reasonable attorneys' fees.

"**Material Adverse Effect**" means any event, occurrence, fact, condition or change that is materially adverse to (a) the business, results of operations, financial condition or assets of the Business, taken as a whole, or (b) the ability of Seller to consummate the transactions contemplated hereby; *provided, however,* that "Material Adverse Effect" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (i) general economic or political conditions; (ii) conditions generally affecting the industries in which the Business operates; (iii) any changes in financial, banking or securities markets in general, including any disruption thereof and any decline in the price of any security or any market index or any change in prevailing interest rates; (iv) acts of war (whether or not declared), armed hostilities or terrorism, or the escalation or worsening thereof; (v) any action required or permitted by this Agreement or any action taken (or omitted to be taken) with the written consent of or at the written request of Buyer; (vi) any matter of which Buyer is aware on the date hereof; (vii) any changes in applicable Laws or accounting rules (including GAAP) or the enforcement, implementation or interpretation thereof; (viii) the announcement, pendency or completion of the transactions contemplated by this Agreement, including losses or threatened losses of employees, customers, suppliers, distributors or others having relationships with the Seller and the Business; (ix) any natural or man-made disaster or acts of God; or (x) any failure by the Business to meet any internal or published projections, forecasts or revenue or earnings predictions (provided that the underlying causes of such failures (subject to the other provisions of this definition) shall not be excluded).

"**Permits**" means all permits, licenses, franchises, approvals, authorizations and consents required to be obtained from Governmental Authorities.

"**Permitted Encumbrances**" means (a) liens for Taxes not yet due and payable or being contested in good faith by appropriate procedures; (b) mechanics', carriers', workmen's, repairmen's or other like liens arising or incurred in the ordinary course of business; (c) easements, rights of way, zoning ordinances and other similar encumbrances affecting Leased Real Property; (d) liens arising under original purchase price conditional sales contracts and equipment leases with third parties entered into in the ordinary course of business; and (e) other imperfections of title or Encumbrances, if any, that have not had, and would not have, a Material Adverse Effect.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"**Promissory Note**" has the meaning set forth in Section 2.05.

"**Purchase Price**" has the meaning set forth in Section 2.05.

"**Purchased Assets**" has the meaning set forth in Section 2.01.

"**Release**" means any actual or threatened release, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, abandonment, disposing or allowing to escape or migrate into or through the environment (including, without limitation, ambient air (indoor or outdoor), surface water, groundwater, land surface or subsurface strata or within any building, structure, facility or fixture).

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

"**Security Agreement**" has the meaning set forth in Section 2.05.

"**Seller**" has the meaning set forth in the preamble.

"**Tangible Personal Property**" has the meaning set forth in Section 2.01(e).

"**Taxes**" means all federal, state, local, foreign and other income, gross receipts, sales, use, production, ad valorem, transfer, franchise, registration, profits, license, lease, service, service use, withholding, payroll, employment, unemployment, estimated, excise, severance, environmental, stamp, occupation, premium, property (real or personal), real property gains, windfall profits, customs, duties or other taxes, fees, assessments or charges of any kind whatsoever, together with any interest, additions or penalties with respect thereto and any interest in respect of such additions or penalties.

"**Tax Return**" means any return, declaration, report, claim for refund, information return or statement or other document required to be filed with respect to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"**Third-Party Claim**" has the meaning set forth in Section 8.05(a).

"**Transaction Documents**" means this Agreement, the Bill of Sale, the Assignment and Assumption Agreement, Promissory Note, Security Agreement, Commercial Sublease, and the other agreements, instruments and documents required to be delivered at the Closing.

## ARTICLE II
## PURCHASE AND SALE

**Section 2.01** **Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in, to and under the following assets, properties and rights of Seller and its DBAs to the extent that such assets, properties and rights exist as of the Closing Date and exclusively relate to the Business (collectively, the "**Purchased Assets**"):

(a) all accounts or notes receivable of the Business;

(b) all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories of the Business ("**Inventory**");

(c) all Contracts set forth on Section 2.01(c) of the Disclosure Schedule and the Leases set forth on Section 4.09(b) of the Disclosure Schedule (collectively, the "**Assigned Contracts**");

(d) all Intellectual Property Assets as set forth on Section 4.10(a) of the Disclosure Schedule;

(e) all furniture, fixtures, vehicles, equipment, supplies and other tangible personal property of the Business listed on Section 2.01(e) of the Disclosure Schedule (the "**Tangible Personal Property**");

(f) all Leased Real Property;

(g) all Permits listed on Section 2.01(g) of the Disclosure Schedule, but only to the extent such Permits may be transferred under applicable Law;

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(h) all prepaid expenses, credits, advance payments, security, deposits, charges, sums and fees to the extent related to any Purchased Assets;

(i) all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(j) originals, or where not available, copies, of all available books and records, vehicle and equipment files, customer lists, price lists, supplier lists that exclusively relate to the Business or the Purchased Assets, other than books and records set forth in Section 2.02(d) ("**Books and Records**");

(k) the DBAs as more particularly described in Section 2.01(k) of the Disclosure Schedule; and

(l) all goodwill associated with any of the assets described in the foregoing clauses.

**Section 2.02 Excluded Assets.** Other than the Purchased Assets subject to Section 2.01, Buyer expressly understands and agrees that it is not purchasing or acquiring, and Seller is not selling or assigning, any other assets or properties of Seller, and all such other assets and properties shall be excluded from the Purchased Assets (the "**Excluded Assets**"). Excluded Assets include the following assets and properties of Seller:

(a) all cash and cash equivalents, bank accounts and securities of Seller;

(b) all Contracts that are not Assigned Contracts;

(c) all Intellectual Property other than the Intellectual Property Assets;

(d) the corporate seals, organizational documents, minute books, Tax Returns, books of account or other records having to do with the corporate organization of Seller, all employee-related or employee benefit-related files or records, and any other books and records which Seller is prohibited from disclosing or transferring to Buyer under applicable Law and is required by applicable Law to retain;

(e) all insurance policies of Seller and all rights to applicable claims and proceeds thereunder;

(f) all Tax assets (including duty and Tax refunds and prepayments) of Seller or any of its Affiliates;

(g) all rights to any action, suit or claim of any nature available to or being pursued by Seller, whether arising by way of counterclaim or otherwise, including, without limitation, Civil Action Number 1:19-cv-00016, styled as "A-Pro Towing and Recovery, LLC et al. v. City of Port Isabel et al.", filed on February 11, 2019, in the United States District Court for the Southern District of Texas;

(h) VTS Systems software account credentials and data as required by applicable law; and

(i) the rights which accrue or will accrue to Seller under the Transaction Documents.

**Section 2.03 Assumed Liabilities.** Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge when due any and all liabilities and obligations of Seller arising out of or relating to the Business or the Purchased Assets on or after the Closing, other than the Excluded Liabilities (collectively, the "**Assumed Liabilities**"), including, without limitation, the following:

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(a) all trade accounts payable of Seller to third parties in connection with the Business for all periods from and after the Closing Date;

(b) all liabilities and obligations arising under or relating to the Assigned Contracts;

(c) all liabilities and obligations of Buyer or its Affiliates relating to employee benefits, compensation or other employment arrangements arising on or after the Closing;

(d) all liabilities and obligations for (i) Taxes relating to the Business, the Purchased Assets or the Assumed Liabilities for any taxable period ending after the Closing Date and (ii) Taxes for which Buyer is liable pursuant to Section 6.11; and

(e) all other liabilities and obligations arising out of or relating to Buyer's ownership or operation of the Business and the Purchased Assets prior to, on, or after the Closing;

**Section 2.04 Excluded Liabilities.** Buyer shall not assume and shall not be responsible to pay, perform or discharge any of the following liabilities or obligations of Seller (collectively, the "**Excluded Liabilities**"):

(a) any liabilities or obligations arising out of or relating to Seller's ownership or operation of the Business and the Purchased Assets prior to the Closing Date;

(b) any liabilities or obligations relating to or arising out of the Excluded Assets;

(c) any liabilities or obligations for (i) Taxes relating to the Business, the Purchased Assets or the Assumed Liabilities for any taxable period ending on or prior to the Closing Date and (ii) any other Taxes of Seller (other than Taxes allocated to Buyer under Section 6.11) for any taxable period;

(d) any liabilities or obligations of Seller relating to or arising out of (i) the employment, or termination of employment, of any Employee prior to the Closing, or (ii) workers' compensation claims of any Employee which relate to events occurring prior to the Closing Date; and

(e) any liabilities or obligations of Seller arising or incurred in connection with the negotiation, preparation, investigation and performance of this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby, including, without limitation, fees and expenses of counsel, accountants, consultants, advisers and others.

**Section 2.05 Purchase Price.** The aggregate purchase price for the Purchased Assets shall be **$1,754,000.00** (the "**Purchase Price**"), plus the assumption of the Assumed Liabilities. The Purchase Price shall be paid as follows: (i) **$25,000.00** at closing ($2,500.00 of which Buyer has previously deposited with Seller as earnest money); and (ii) the remainder to be paid in accordance with the promissory note executed between the parties in the form attached hereto as **Exhibit C** (the "Promissory Note"), secured by a security agreement executed between the parties in the form attached hereto as **Exhibit D** (the "Security Agreement"), and further secured by a UCC Financing Statement (Form UCC1) to be executed by Buyer at closing.

**Section 2.06 Allocation of Purchase Price.** Within **thirty (30) days** after the Closing Date, Seller shall deliver a schedule allocating the Purchase Price (the "**Allocation Schedule**"). The Allocation Schedule shall be prepared in accordance with Section 1060 of the Code. The Allocation Schedule shall be deemed final unless Buyer notifies Seller in writing that Buyer objects to one or more items reflected in the Allocation Schedule within **ten (10) days** after delivery of the Allocation Schedule to Buyer. In the event of any such objection, Seller and Buyer shall negotiate in good faith to resolve such dispute; *provided, however*, that if Seller and Buyer are unable to resolve any dispute with respect to the Allocation Schedule within **ten (10) days** after

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

the delivery of the Allocation Schedule to Buyer, such dispute shall be resolved by a certified public accountant mutually appointed by the parties or, if such CPA is unable to serve, another impartial nationally recognized firm of independent certified public accountants mutually appointed by Buyer and Seller. The fees and expenses of such accounting firm shall be borne equally by Seller and Buyer. Seller and Buyer agree to file their respective IRS Forms 8594 and all federal, state and local Tax Returns in accordance with the Allocation Schedule.

**Section 2.07 Non-assignable Assets.**

(a) Notwithstanding anything to the contrary in this Agreement, and subject to the provisions of this Section 2.07, to the extent that the sale, assignment, transfer, conveyance or delivery, or attempted sale, assignment, transfer, conveyance or delivery, to Buyer of any Purchased Asset would result in a violation of applicable Law, or would require the consent, authorization, approval or waiver of a Person who is not a party to this Agreement or an Affiliate of a party to this Agreement (including any Governmental Authority), and such consent, authorization, approval or waiver shall not have been obtained prior to the Closing, this Agreement shall not constitute a sale, assignment, transfer, conveyance or delivery, or an attempted sale, assignment, transfer, conveyance or delivery, thereof; *provided, however,* that, subject to the satisfaction or waiver of the conditions contained in ARTICLE VII, the Closing shall occur notwithstanding the foregoing without any adjustment to the Purchase Price on account thereof. Following the Closing, Seller and Buyer shall use commercially reasonable efforts, and shall cooperate with each other, to obtain any such required consent, authorization, approval or waiver, or any release, substitution or amendment required to novate all liabilities and obligations under any and all Assigned Contracts or other liabilities that constitute Assumed Liabilities or to obtain in writing the unconditional release of all parties to such arrangements, so that, in any case, Buyer shall be solely responsible for such liabilities and obligations from and after the Closing Date; *provided, however,* that neither Seller nor Buyer shall be required to pay any consideration therefor. Once such consent, authorization, approval, waiver, release, substitution or amendment is obtained, Seller shall sell, assign, transfer, convey and deliver to Buyer the relevant Purchased Asset to which such consent, authorization, approval, waiver, release, substitution or amendment relates for no additional consideration. Applicable sales, transfer and other similar Taxes in connection with such sale, assignment, transfer, conveyance or license shall be paid by Buyer in accordance with Section 6.11.

(b) To the extent that any Purchased Asset and/or Assumed Liability cannot be transferred to Buyer following the Closing pursuant to this Section 2.07, Buyer and Seller shall use commercially reasonable efforts to enter into such arrangements (such as subleasing, sublicensing or subcontracting) to provide to the parties the economic and, to the extent permitted under applicable Law, operational equivalent of the transfer of such Purchased Asset and/or Assumed Liability to Buyer as of the Closing and the performance by Buyer of its obligations with respect thereto. Buyer shall, as agent or subcontractor for Seller pay, perform and discharge fully the liabilities and obligations of Seller thereunder from and after the Closing Date. To the extent permitted under applicable Law, Seller shall, at Buyer's expense, hold in trust for and pay to Buyer promptly upon receipt thereof, such Purchased Asset and all income, proceeds and other monies received by Seller to the extent related to such Purchased Asset in connection with the arrangements under this Section 2.07. Seller shall be permitted to set off against such amounts all direct costs associated with the retention and maintenance of such Purchased Assets. Notwithstanding anything herein to the contrary, the provisions of this Section 2.07 shall not apply to any consent or approval required under any antitrust, competition or trade regulation Law, which consent or approval shall be governed by Section 6.06.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## ARTICLE III
## CLOSING

**Section 3.01** **Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of Rios Law, 222 N Expressway, Suite 130, Brownsville, Texas 78521, on the second (2nd) Business Day after all of the conditions to Closing set forth in ARTICLE VII are either satisfied or waived (other than conditions which, by their nature, are to be satisfied on the Closing Date), or at such other time, date or place as Seller and Buyer may mutually agree upon in writing. The parties acknowledge and agree that execution of the Transaction Documents may be via electronic signature using a nationally recognized electronic signature service, such as DocuSign or Adobe Sign. The date on which the Closing is to occur is herein referred to as the "**Closing Date**".

**Section 3.02** **Closing Deliverables.**

(a) At the Closing, Seller shall deliver to Buyer the following:

(i) a bill of sale in the form of **Exhibit A** hereto (the "**Bill of Sale**") and duly executed by Seller, transferring the tangible personal property included in the Purchased Assets to Buyer;

(ii) an assignment and assumption agreement in the form of **Exhibit B** hereto (the "**Assignment and Assumption Agreement**") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

(iii) Executed Promissory Note;

(iv) Executed Security Agreement

(v) with respect to each Lease, a Commercial Sublease Agreement substantially in the form of **Exhibit E** (each, a "**Commercial Sublease Agreement**"), duly executed by Seller; and

(vi) such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement.

(b) At the Closing, Buyer shall deliver to Seller the following:

(i) A certified or cashier's check in the amount of **$22,500.00**;

(ii) Executed Promissory Note;

(iii) Executed Security Agreement;

(iv) the Assignment and Assumption Agreement duly executed by Buyer; and

(v) with respect to each Lease, a Commercial Sublease Agreement duly executed by Buyer.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Except as set forth in the Disclosure Schedule, Seller represents and warrants to Buyer that the statements contained in this ARTICLE IV are true and correct as of the date hereof.

**Section 4.01 Organization and Qualification of Seller.** Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Texas and has all necessary power and authority to own, operate or lease the properties and assets now owned, operated or leased by it and to carry on the Business as currently conducted. Seller is duly licensed or qualified to do business and is in good standing in each jurisdiction in which the ownership of the Purchased Assets or the operation of the Business as currently conducted makes such licensing or qualification necessary, except where the failure to be so licensed, qualified or in good standing would not have a Material Adverse Effect.

**Section 4.02 Authority of Seller.** Seller has all necessary power and authority to enter into this Agreement and the other Transaction Documents to which Seller is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Seller of this Agreement and any other Transaction Document to which Seller is a party, the performance by Seller of its obligations hereunder and thereunder and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite action on the part of Seller. This Agreement has been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity). When each other Transaction Document to which Seller is or will be a party has been duly executed and delivered by Seller (assuming due authorization, execution and delivery by each other party thereto), such Transaction Document will constitute a legal and binding obligation of Seller enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 4.03 No Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) result in a violation or breach of any provision of the certificate of formation or company agreement of Seller; (b) result in a violation or breach of any provision of any Law or Governmental Order applicable to Seller, the Business or the Purchased Assets; or (c) require the consent, notice or other action by any Person under, conflict with, result in a violation or breach of, constitute a default under or result in the acceleration of any Assigned Contracts; except in the cases of clauses (b) and (c) where the violation, breach, conflict, default, acceleration or failure to give notice would not have a Material Adverse Effect. No consent, approval, Permit, Governmental Order, declaration or filing with, or notice to, any Governmental Authority is required by or with respect to Seller in connection with the execution and delivery of this Agreement or any of the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby, except such consents, approvals, Permits, Governmental Orders, declarations, filings or notices which, in the aggregate, would not have a Material Adverse Effect.

**Section 4.04 Financial Statements.** Copies of the unaudited financial statements consisting of sales reports for years 2016, 2017, 2018, and 2019 (the "**Financial Statements**") are included in Section 4.04 of the Disclosure Schedule and have been delivered to Buyer. The Financial Statements fairly present in all material respects the financial condition of the Business as of the respective dates they were prepared and the results of the operations of the Business for the periods indicated.

**Section 4.05 Absence of Certain Changes, Events and Conditions.** Except as expressly contemplated by this Agreement, from the date of full execution of the letter of intent between the parties

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

regarding this transaction, Seller has operated the Business in the ordinary course of business in all material respects and there has not been, with respect to the Business, any:

(a) event, occurrence or development that has had a Material Adverse Effect;

(b) incurrence of any indebtedness for borrowed money in connection with the Business, except unsecured current obligations and liabilities incurred in the ordinary course of business;

(c) sale or other disposition of any of the Purchased Assets shown or reflected, except for the sale of Inventory in the ordinary course of business;

(d) cancellation of any debts or claims or amendment, termination or waiver of any rights constituting Purchased Assets, except in the ordinary course of business;

(e) *intentionally omitted*;

(f) imposition of any Encumbrance upon any of the Purchased Assets, except for Permitted Encumbrances;

(g) *intentionally omitted*;

(h) *intentionally omitted*;

(i) adoption of any plan of merger, consolidation, reorganization, liquidation or dissolution or filing of a petition in bankruptcy under any provisions of federal or state bankruptcy Law or consent to the filing of any bankruptcy petition against it under any similar Law;

(j) purchase or other acquisition of any property or asset that constitutes a Purchased Asset for an amount in excess of $500.00, except for purchases of Inventory or supplies in the ordinary course of business; or

(k) any agreement to do any of the foregoing, or any action or omission that would result in any of the foregoing.

**Section 4.06** ***Intentionally Omitted.***

**Section 4.07** **Title to Tangible Personal Property.** Seller has good and valid title to, or a valid leasehold interest in, all Tangible Personal Property included in the Purchased Assets, free and clear of Encumbrances except for Permitted Encumbrances.

**Section 4.08** **Sufficiency of Assets.** The Purchased Assets are sufficient for the continued conduct of the Business after the Closing in substantially the same manner as conducted prior to the Closing and constitute all of the rights, property and assets necessary to conduct the Business as currently conducted, subject to reasonable wear and tear of tangible personal property and routine maintenance and replacement of same.

**Section 4.09** **Real Property.**

(a) *Intentionally Omitted.*

(b) Section 4.09(b) of the Disclosure Schedule sets forth all material real property leased by Seller and exclusively used in connection with the Business (collectively, the "**Leased Real Property**"), and a list, as of the date of this Agreement, of all leases for each Leased Real Property (collectively, the "**Leases**").

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(c) Seller has not received any written notice of existing, pending or threatened (i) condemnation proceedings affecting the Leased Real Property, or (ii) zoning, building code or other moratorium proceedings, or similar matters which would reasonably be expected to materially and adversely affect the ability to operate the Leased Real Property as currently operated. Neither the whole nor any material portion of any Leased Real Property has been damaged or destroyed by fire or other casualty.

**Section 4.10 Intellectual Property.**

(a) Section 4.10(a) of the Disclosure Schedule lists all Intellectual Property Assets. Except as would not have a Material Adverse Effect, Seller owns or has the right to use all Intellectual Property Assets and the Intellectual Property licensed to Seller under the Contracts, as applicable.

(b) Except as would not have a Material Adverse Effect, to Seller's Knowledge: (i) the conduct of the Business as currently conducted does not infringe, misappropriate, dilute or otherwise violate the Intellectual Property of any Person; and (ii) no Person is infringing, misappropriating or otherwise violating any Intellectual Property Assets. Notwithstanding anything to the contrary in this Agreement, this Section 4.10(b) constitutes the sole representation and warranty of the Seller under this Agreement with respect to any actual or alleged infringement, misappropriation or other violation by Seller of any Intellectual Property of any other Person.

**Section 4.11 Legal Proceedings; Governmental Orders.**

(a) There are no actions, suits, claims, investigations or other legal proceedings pending or, to Seller's Knowledge, threatened against or by Seller relating to or affecting the Business, the Purchased Assets or the Assumed Liabilities, which if determined adversely to Seller would result in a Material Adverse Effect.

(b) There are no outstanding Governmental Orders and no unsatisfied judgments, penalties or awards against or affecting the Business or the Purchased Assets which would have a Material Adverse Effect.

**Section 4.12 Compliance with Laws; Permits.**

(a) Seller is in compliance with all Laws applicable to the conduct of the Business as currently conducted or the ownership and use of the Purchased Assets, except where the failure to be in compliance would not have a Material Adverse Effect.

(b) All Permits required for Seller to conduct the Business as currently conducted or for the ownership and use of the Purchased Assets have been obtained by Seller and are valid and in full force and effect, except where the failure to obtain such Permits would not have a Material Adverse Effect.

(c) None of the representations and warranties in Section 4.12 shall be deemed to relate to environmental matters (which are governed by Section 4.13), employment matters (which are governed by Section 4.15) or tax matters (which are governed by Section 4.16).

**Section 4.13 Environmental Matters.**

(a) Except as would not have a Material Adverse Effect, to Seller's Knowledge, the operations of Seller with respect to the Business and the Purchased Assets are in compliance with all Environmental Laws. Seller has not received from any Person, with respect to the Business or the Purchased Assets, any: (i) Environmental Notice or Environmental Claim; or (ii) written request for information pursuant to Environmental Law, which, in each case, either remains pending or unresolved, or is the source of ongoing obligations or requirements as of the Closing Date.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(b) The representations and warranties set forth in this Section 4.13 are the Seller's sole and exclusive representations and warranties regarding environmental matters.

**Section 4.14** ***Intentionally Omitted.***

**Section 4.15 Employment Matters.**

(a) Seller is in compliance with all applicable Laws pertaining to employment and employment practices to the extent they relate to the Business, except to the extent non-compliance would not result in a Material Adverse Effect.

(b) The representations and warranties set forth in this Section 4.15 are the Seller's sole and exclusive representations and warranties regarding employment matters.

**Section 4.16 Taxes.**

(a) Except as would not have a Material Adverse Effect, Seller has filed (taking into account any valid extensions) all material Tax Returns with respect to the Business required to be filed by Seller and has paid all Taxes shown thereon as owing.

(b) Seller is not a "foreign person" as that term is used in Treasury Regulations Section 1.1445-2.

(c) The representations and warranties set forth in this Section 4.16 are Seller's sole and exclusive representations and warranties regarding Tax matters.

**Section 4.17 Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Seller.

**Section 4.18 No Other Representations and Warranties.** Except for the representations and warranties contained in this ARTICLE IV (including the related portions of the Disclosure Schedule), neither Seller nor any other Person has made or makes any other express or implied representation or warranty, either written or oral, on behalf of Seller, including any representation or warranty as to the accuracy or completeness of any information regarding the Business and the Purchased Assets furnished or made available to Buyer and its Representatives (including any information, documents or material delivered to Buyer), or as to the future revenue, profitability or success of the Business, or any representation or warranty arising from statute or otherwise in law.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this ARTICLE V are true and correct as of the date hereof.

**Section 5.01 Organization and Authority of Buyer.** Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Texas.

**Section 5.02 Authority of Buyer.** Buyer has all necessary power and authority to enter into this Agreement and the other Transaction Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any other Transaction Document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement constitutes a legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity). When each other Transaction Document to which Buyer is or will be a party has been duly executed and delivered by Buyer (assuming due authorization, execution and delivery by each other party thereto), such Transaction Document will constitute a legal and binding obligation of Buyer enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 5.03 No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) result in a violation or breach of any provision of the certificate of formation or by-laws of Buyer; (b) result in a violation or breach of any provision of any Law or Governmental Order applicable to Buyer; or (c) require the consent, notice or other action by any Person under, conflict with, result in a violation or breach of, constitute a default under or result in the acceleration of any agreement to which Buyer is a party, except in the cases of clauses (b) and (c) where the violation, breach, conflict, default, acceleration or failure to give notice would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby. No consent, approval, Permit, Governmental Order, declaration or filing with, or notice to, any Governmental Authority is required by or with respect to Buyer in connection with the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby, except for such consents, approvals, Permits, Governmental Orders, declarations, filings or notices which would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby and thereby.

**Section 5.04 Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Buyer.

**Section 5.05 Sufficiency of Funds.** Buyer has sufficient cash on hand or other sources of immediately available funds to enable it to make the payment required at Closing and consummate the transactions contemplated by this Agreement.

**Section 5.06 Solvency.** Immediately after giving effect to the transactions contemplated hereby, Buyer shall be solvent and shall: (a) be able to pay its debts as they become due; and (b) have adequate capital to carry on its business. No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated hereby with the intent to hinder, delay or defraud either present or future creditors of Buyer or Seller. In connection with the transactions contemplated hereby, Buyer has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured.

**Section 5.07 Legal Proceedings.** There are no actions, suits, claims, investigations or other legal proceedings pending or, to Buyer's knowledge, threatened against or by Buyer or any Affiliate of Buyer that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

**Section 5.08 Independent Investigation.** Buyer has conducted its own independent investigation, review and analysis of the Business and the Purchased Assets, and acknowledges that it has been provided adequate access to the properties, assets, premises, books and records, and other documents and data of Seller for such purpose. Buyer acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely upon its own investigation and the express representations and warranties of Seller set forth in ARTICLE IV of this Agreement (including related portions of the Disclosure Schedule); and (b) neither Seller nor any other Person has made any representation or warranty as to Seller, the Business, the Purchased Assets or this Agreement, except as

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

expressly set forth in ARTICLE IV of this Agreement (including the related portions of the Disclosure Schedule).

## ARTICLE VI
## COVENANTS

**Section 6.01 Conduct of Business Prior to the Closing.** From the date hereof until the Closing, except as otherwise provided in this Agreement or consented to in writing by Buyer (which consent shall not be unreasonably withheld or delayed), Seller shall (a) conduct the Business in the ordinary course of business; and (b) use commercially reasonable efforts to maintain and preserve intact its current Business operations and to preserve the rights, goodwill and relationships of its customers, suppliers, regulators and others having relationships with the Business. From the date hereof until the Closing Date, except as consented to in writing by Buyer (which consent shall not be unreasonably withheld or delayed), Seller shall not take any action that would cause any of the changes, events or conditions described in Section 4.05 to occur.

**Section 6.02 Access to Information.** From the date hereof until the Closing, Seller shall (a) afford Buyer and its Representatives reasonable access to and the right to inspect all of the Real Property, properties, assets, premises, Books and Records, Assigned Contracts and other documents and data related to the Business; (b) furnish Buyer and its Representatives with such financial, operating and other data and information related to the Business as Buyer or any of its Representatives may reasonably request; and (c) instruct the Representatives of Seller to cooperate with Buyer in its investigation of the Business; *provided, however,* that any such investigation shall be conducted during normal business hours upon reasonable advance notice to Seller, under the supervision of Seller's personnel and in such a manner as not to interfere with the conduct of the Business or any other businesses of Seller. All requests by Buyer for access pursuant to this Section 6.02 shall be submitted or directed exclusively to Eduardo Peña or such other individuals as Seller may designate in writing from time to time. Notwithstanding anything to the contrary in this Agreement, Seller shall not be required to disclose any information to Buyer if such disclosure would, in Seller's sole discretion: (x) cause significant competitive harm to Seller and its businesses, including the Business, if the transactions contemplated by this Agreement are not consummated; (y) jeopardize any attorney-client or other privilege; or (z) contravene any applicable Law, fiduciary duty or binding agreement entered into prior to the date of this Agreement. Prior to the Closing, without the prior written consent of Seller, which may be withheld for any reason, Buyer shall not contact any suppliers to, or customers of, the Business and Buyer shall have no right to perform invasive investigations of the Real Property. Buyer shall, and shall cause its Representatives to, abide by the terms of the Confidentiality Agreement with respect to any access or information provided pursuant to this Section 6.02.

**Section 6.03 Supplement to Disclosure Schedule.** From time to time prior to the Closing, Seller shall have the right (but not the obligation) to supplement or amend the Disclosure Schedule hereto with respect to any matter hereafter arising or of which it becomes aware after the date hereof (each a "**Schedule Supplement**"). Any disclosure in any such Schedule Supplement shall not be deemed to have cured any inaccuracy in or breach of any representation or warranty contained in this Agreement, including for purposes of the indemnification or termination rights contained in this Agreement or of determining whether or not the conditions set forth in Section 7.02(a) have been satisfied; *provided, however,* that if Buyer has the right to, but does not elect to, terminate this Agreement within two (2) Business Days of its receipt of such Schedule Supplement, then Buyer shall be deemed to have irrevocably waived any right to terminate this Agreement with respect to such matter and, further, shall have irrevocably waived its right to indemnification under Section 8.02 with respect to such matter.

**Section 6.04** *Intentionally Omitted.*

**Section 6.05 Confidentiality.** Buyer acknowledges and agrees that the Confidentiality Agreement remains in full force and effect and, in addition, covenants and agrees to keep confidential, in accordance with the provisions of the Confidentiality Agreement, information provided to Buyer pursuant to this Agreement. If

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

this Agreement is, for any reason, terminated prior to the Closing, the Confidentiality Agreement and the provisions of this Section 6.05 shall nonetheless continue in full force and effect.

**Section 6.06 Governmental Approvals and Consents.**

(a) Each party hereto shall, as promptly as possible, use its reasonable best efforts to obtain, or cause to be obtained, all consents, authorizations, orders and approvals from all Governmental Authorities that may be or become necessary for its execution and delivery of this Agreement and the performance of its obligations pursuant to this Agreement and the other Transaction Documents, including, without limitation, operating permits, licenses, and/or approvals from the Texas Department of Licensing and Regulation. Each party shall cooperate fully with the other party and its Affiliates in promptly seeking to obtain all such consents, authorizations, orders and approvals. The parties hereto shall not willfully take any action that will have the effect of delaying, impairing or impeding the receipt of any required consents, authorizations, orders and approvals.

**Section 6.07 Books and Records.**

(a) In order to facilitate the resolution of any claims made against or incurred by Seller prior to, on, or after the Closing, or for any other reasonable purpose, for a period of ten (10) years after the Closing, Buyer shall:

(i) retain the Books and Records relating to periods prior to, on, and after the Closing in a manner reasonably consistent with the prior practices of Seller; and

(ii) upon reasonable notice, afford the Seller's Representatives reasonable access (including the right to make, at Seller's expense, photocopies), during normal business hours, to such Books and Records.

(b) In order to facilitate the resolution of any claims made by or against or incurred by Buyer after the Closing, or for any other reasonable purpose, for a period of ten (10) years after the Closing, Seller shall:

(i) retain the books and records of Seller which relate to the Business and its operations for periods prior to the Closing; and

(ii) upon reasonable notice, afford the Buyer's Representatives reasonable access (including the right to make, at Buyer's expense, photocopies), during normal business hours, to such books and records.

(c) Neither Buyer nor Seller shall be obligated to provide the other party with access to any books or records (including personnel files) pursuant to this Section 6.07 where such access would violate any Law.

**Section 6.08 Closing Conditions.** From the date hereof until the Closing, each party hereto shall use commercially reasonable efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in ARTICLE VII hereof.

**Section 6.09 Public Announcements.** Unless otherwise required by applicable Law (based upon the reasonable advice of counsel), no party to this Agreement shall make any public announcements in respect of this Agreement or the transactions contemplated hereby or otherwise communicate with any news media without the prior written consent of the other party (which consent shall not be unreasonably withheld or delayed), and the parties shall cooperate as to the timing and contents of any such announcement.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**Section 6.10** **Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar Laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**Section 6.11** **Transfer Taxes.** All transfer, documentary, sales, use, stamp, registration, value added and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other Transaction Documents shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Seller shall cooperate with respect thereto as necessary).

**Section 6.12** **Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the other Transaction Documents.

## ARTICLE VII
## CONDITIONS TO CLOSING

**Section 7.01** **Conditions to Obligations of All Parties.** The obligations of each party to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions:

(a) No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Governmental Order which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(b) Seller shall have received all consents, authorizations, orders and approvals from the Governmental Authorities referred to in Section 4.03 and Buyer shall have received all consents, authorizations, orders and approvals from the Governmental Authorities referred to in Section 5.03, in each case, in form and substance reasonably satisfactory to Buyer and Seller, and no such consent, authorization, order and approval shall have been revoked.

**Section 7.02** **Conditions to Obligations of Buyer.** The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to the Closing, of each of the following conditions:

(a) The representations and warranties of Seller contained in ARTICLE IV shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date), except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect.

(b) Seller shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement and each of the other Transaction Documents to be performed or complied with by it prior to or on the Closing Date.

(c) Seller shall have delivered to Buyer duly executed counterparts to the Transaction Documents (other than this Agreement) and such other documents and deliveries set forth in Section 3.02(a).

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(d) Buyer shall have received a certificate, dated the Closing Date and signed by a duly authorized officer of Seller, that each of the conditions set forth in Section 7.02(a) and Section 7.02(b) have been satisfied (the "**Seller Closing Certificate**").

(e) Buyer shall have received true and complete copies of all resolutions adopted by the members of Seller authorizing the execution, delivery and performance of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby, and that all such resolutions are in full force and effect and are all the resolutions adopted in connection with the transactions contemplated hereby and thereby.

**Section 7.03 Conditions to Obligations of Seller.** The obligations of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(a) The representations and warranties of Buyer contained in ARTICLE V shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date), except where the failure of such representations and warranties to be true and correct would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby.

(b) Buyer shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement and each of the other Transaction Documents to be performed or complied with by it prior to or on the Closing Date.

(c) Buyer shall have delivered to Seller duly executed counterparts to the Transaction Documents (other than this Agreement) and such other documents and deliveries set forth in Section 3.02(b).

(d) *Intentionally omitted.*

(e) Seller shall have received true and complete copies of all resolutions adopted by the board of directors of Buyer authorizing the execution, delivery and performance of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby, and that all such resolutions are in full force and effect and are all the resolutions adopted in connection with the transactions contemplated hereby and thereby.

## ARTICLE VIII
## INDEMNIFICATION

**Section 8.01 Survival.** Subject to the limitations and other provisions of this Agreement, the representations and warranties contained herein shall survive the Closing and shall remain in full force and effect until the date that is two (2) years from the Closing Date. None of the covenants or other agreements contained in this Agreement shall survive the Closing Date other than those which by their terms contemplate performance after the Closing Date, and each such surviving covenant and agreement shall survive the Closing for the period contemplated by its terms. Notwithstanding the foregoing, any claims asserted in good faith with reasonable specificity (to the extent known at such time) and in writing by notice from the non-breaching party to the breaching party prior to the expiration date of the applicable survival period shall not thereafter be barred by the expiration of such survival period and such claims shall survive until finally resolved.

**Section 8.02 Indemnification by Seller.** Subject to the other terms and conditions of this ARTICLE VIII, Seller shall indemnify Buyer against, and shall hold Buyer harmless from and against, any and all Losses incurred or sustained by, or imposed upon, Buyer based upon, arising out of, with respect to or by reason of:

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(a) any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement;

(b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement; or

(c) any Excluded Asset or any Excluded Liability.

**Section 8.03 Indemnification by Buyer.** Subject to the other terms and conditions of this ARTICLE VIII, Buyer shall indemnify Seller against, and shall hold Seller harmless from and against, any and all Losses incurred or sustained by, or imposed upon, Seller based upon, arising out of, with respect to or by reason of:

(a) any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement;

(b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement; or

(c) any Assumed Liability.

**Section 8.04 Certain Limitations.** The party making a claim under this ARTICLE VIII is referred to as the "**Indemnified Party**", and the party against whom such claims are asserted under this ARTICLE VIII is referred to as the "**Indemnifying Party**". The indemnification provided for in Section 8.02 and Section 8.03 shall be subject to the following limitations:

(a) The Indemnifying Party shall not be liable to the Indemnified Party for indemnification under Section 8.02(a) or Section 8.03(a), as the case may be, until the aggregate amount of all Losses in respect of indemnification under Section 8.02(a) or Section 8.03(a) exceeds $500.00 (the "**Deductible**"), in which event the Indemnifying Party shall only be required to pay or be liable for Losses in excess of the Deductible. With respect to any claim as to which the Indemnified Party may be entitled to indemnification under Section 8.02(a) or Section 8.03(a), as the case may be, the Indemnifying Party shall not be liable for any individual or series of related Losses which do not exceed $500.00.

(b) The aggregate amount of all Losses for which an Indemnifying Party shall be liable pursuant to Section 8.02(a) or Section 8.03(a), as the case may be, shall not exceed 5% of the Purchase Price.

(c) Payments by an Indemnifying Party pursuant to Section 8.02 or Section 8.03 in respect of any Loss shall be limited to the amount of any liability or damage that remains after deducting therefrom any insurance proceeds and any indemnity, contribution or other similar payment received or reasonably expected to be received by the Indemnified Party in respect of any such claim. The Indemnified Party shall use its commercially reasonable efforts to recover under insurance policies or indemnity, contribution or other similar agreements for any Losses prior to seeking indemnification under this Agreement.

(d) Payments by an Indemnifying Party pursuant to Section 8.02 or Section 8.03 in respect of any Loss shall be reduced by an amount equal to any Tax benefit realized or reasonably expected to be realized as a result of such Loss by the Indemnified Party.

(e) In no event shall any Indemnifying Party be liable to any Indemnified Party for any punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income (specifically excluding payments to be made by Buyer to Seller toward the balance of the

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

Purchase Price under the Promissory Note), loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement.

(f) Each Indemnified Party shall take, and cause its Affiliates to take, all reasonable steps to mitigate any Loss upon becoming aware of any event or circumstance that would be reasonably expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach that gives rise to such Loss.

(g) Seller shall not be liable under this ARTICLE VIII for any Losses based upon or arising out of any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement if Buyer had knowledge of such inaccuracy or breach prior to the Closing.

**Section 8.05 Indemnification Procedures.**

(a) Third-Party Claims. If any Indemnified Party receives notice of the assertion or commencement of any action, suit, claim or other legal proceeding made or brought by any Person who is not a party to this Agreement or an Affiliate of a party to this Agreement or a Representative of the foregoing (a "**Third-Party Claim**") against such Indemnified Party with respect to which the Indemnifying Party is obligated to provide indemnification under this Agreement, the Indemnified Party shall give the Indemnifying Party prompt written notice thereof. The failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure. Such notice by the Indemnified Party shall describe the Third-Party Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the Indemnified Party. The Indemnifying Party shall have the right to participate in, or by giving written notice to the Indemnified Party, to assume the defense of any Third-Party Claim at the Indemnifying Party's expense and by the Indemnifying Party's own counsel, and the Indemnified Party shall cooperate in good faith in such defense. In the event that the Indemnifying Party assumes the defense of any Third-Party Claim, subject to Section 8.05(b), it shall have the right to take such action as it deems necessary to avoid, dispute, defend, appeal or make counterclaims pertaining to any such Third-Party Claim in the name and on behalf of the Indemnified Party. The Indemnified Party shall have the right, at its own cost and expense, to participate in the defense of any Third-Party Claim with counsel selected by it subject to the Indemnifying Party's right to control the defense thereof. If the Indemnifying Party elects not to compromise or defend such Third-Party Claim or fails to promptly notify the Indemnified Party in writing of its election to defend as provided in this Agreement, the Indemnified Party may, subject to Section 8.05(b), pay, compromise, defend such Third-Party Claim and seek indemnification for any and all Losses based upon, arising from or relating to such Third-Party Claim. Seller and Buyer shall cooperate with each other in all reasonable respects in connection with the defense of any Third-Party Claim, including making available (subject to the provisions of Section 6.05) records relating to such Third-Party Claim and furnishing, without expense (other than reimbursement of actual out-of-pocket expenses) to the defending party, management employees of the non-defending party as may be reasonably necessary for the preparation of the defense of such Third-Party Claim.

(b) Settlement of Third-Party Claims. Notwithstanding any other provision of this Agreement, the Indemnifying Party shall not enter into settlement of any Third-Party Claim without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), except as provided in this Section 8.05(b). If a firm offer is made to settle a Third-Party Claim without leading to liability or the creation of a financial or other obligation on the part of the Indemnified Party and provides, in customary form, for the unconditional release of each Indemnified Party from all liabilities and obligations in connection with such Third-Party Claim and the Indemnifying Party desires to accept and agree to such offer, the Indemnifying Party shall give written notice to that effect to the Indemnified Party. If the Indemnified Party fails to consent to such firm offer within five (5) days after its receipt of such notice, the Indemnified Party may continue to contest

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

or defend such Third-Party Claim and in such event, the maximum liability of the Indemnifying Party as to such Third-Party Claim shall not exceed the amount of such settlement offer. If the Indemnified Party fails to consent to such firm offer and also fails to assume defense of such Third-Party Claim, the Indemnifying Party may settle the Third-Party Claim upon the terms set forth in such firm offer to settle such Third-Party Claim. If the Indemnified Party has assumed the defense pursuant to Section 8.05(a), it shall not agree to any settlement without the written consent of the Indemnifying Party (which consent shall not be unreasonably withheld or delayed).

(c) Direct Claims. Any claim by an Indemnified Party on account of a Loss which does not result from a Third-Party Claim (a "**Direct Claim**") shall be asserted by the Indemnified Party giving the Indemnifying Party prompt written notice thereof. The failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure. Such notice by the Indemnified Party shall describe the Direct Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the Indemnified Party. The Indemnifying Party shall have thirty (30) days after its receipt of such notice to respond in writing to such Direct Claim. During such 30-day period, the Indemnified Party shall allow the Indemnifying Party and its professional advisors to investigate the matter or circumstance alleged to give rise to the Direct Claim, and whether and to what extent any amount is payable in respect of the Direct Claim and the Indemnified Party shall assist the Indemnifying Party's investigation by giving such information and assistance (including access to the Indemnified Party's premises and personnel and the right to examine and copy any accounts, documents or records) as the Indemnifying Party or any of its professional advisors may reasonably request. If the Indemnifying Party does not so respond within such 30-day period, the Indemnifying Party shall be deemed to have rejected such claim, in which case the Indemnified Party shall be free to pursue such remedies as may be available to the Indemnified Party on the terms and subject to the provisions of this Agreement.

**Section 8.06** ***Intentionally Omitted.***

**Section 8.07** **Exclusive Remedies.** Subject to Section 10.11, the parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims (other than claims arising from (i) fraud on the part of a party hereto in connection with the transactions contemplated by this Agreement, or (ii) the Promissory Note or Security Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this ARTICLE VIII. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon any Law, except pursuant to the indemnification provisions set forth in this ARTICLE VIII. Nothing in this Section 8.07 shall limit any Person's right to seek and obtain any equitable relief to which any Person shall be entitled pursuant to Section 10.11 or to seek any remedy on account of any fraud by any party hereto.

## ARTICLE IX
## TERMINATION

**Section 9.01** **Termination.** This Agreement may be terminated at any time prior to the Closing:

(a) by the mutual written consent of Seller and Buyer;

(b) by Buyer by written notice to Seller if:

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(i) Buyer is not then in material breach of any provision of this Agreement and there has been a material breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Seller pursuant to this Agreement that would give rise to the failure of any of the conditions specified in ARTICLE VII and such breach, inaccuracy or failure cannot be cured by Seller by that date which is three (3) business days before the Closing Date (the "**Drop Dead Date**"); or

(ii) any of the conditions set forth in Section 7.01 or Section 7.02 shall not have been fulfilled by the Drop Dead Date, unless such failure shall be due to the failure of Buyer to perform or comply with any of the covenants, agreements or conditions hereof to be performed or complied with by it prior to the Closing;

(c) by Seller by written notice to Buyer if:

(i) Seller is not then in material breach of any provision of this Agreement and there has been a material breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Buyer pursuant to this Agreement that would give rise to the failure of any of the conditions specified in ARTICLE VII and such breach, inaccuracy or failure cannot be cured by Buyer by the Drop Dead Date; or

(ii) any of the conditions set forth in Section 7.01 or Section 7.03 shall not have been fulfilled by the Drop Dead Date, unless such failure shall be due to the failure of Seller to perform or comply with any of the covenants, agreements or conditions hereof to be performed or complied with by it prior to the Closing; or

(d) by Buyer or Seller in the event that:

(i) there shall be any Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited; or

(ii) any Governmental Authority shall have issued a Governmental Order restraining or enjoining the transactions contemplated by this Agreement, and such Governmental Order shall have become final and non-appealable.

**Section 9.02 Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article, this Agreement shall forthwith become void and there shall be no liability on the part of any party hereto except:

(a) as set forth in this ARTICLE IX, Section 6.05 and ARTICLE X hereof; and

(b) that nothing herein shall relieve any party hereto from liability for any intentional breach of any provision hereof.

## ARTICLE X
## MISCELLANEOUS

**Section 10.01 Expenses.** Except as otherwise expressly provided herein (including Section 6.11 hereof), all costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses, whether or not the Closing shall have occurred.

**Section 10.02 Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 10.02):

| | |
|---|---|
| If to Seller: | A-Pro Towing & Recovery, LLC<br>2216 Padre Blvd Ste. B-185<br>South Padre Island, TX 78597<br>E-mail: epena75@me.com<br>Attention: Eduardo Peña |
| If to Buyer: | A+ Pro Recovery and Towing LLC<br>2216 Padre Blvd B 453<br>South Padre Island, TX 78597<br>E-mail: mail@spi-tow.com<br>Attention: Erik Hager |

**Section 10.03 Interpretation.** For purposes of this Agreement, (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to Articles, Sections, Disclosure Schedules and Exhibits mean the Articles and Sections of, and Disclosure Schedules and Exhibits attached to, this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Disclosure Schedule and Exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**Section 10.04 Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 10.05 Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 10.06 Entire Agreement.** This Agreement and the other Transaction Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous representations, warranties, understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the other Transaction Documents, the Exhibits and Disclosure Schedule (other than an exception expressly set forth as such in the Disclosure Schedule), the statements in the body of this Agreement will control.

REDACTED COPY - PAGES 67-71 REMOVED

Case 22-10032 Claim 2-Part 2 Filed 11/09/22 Desc Exhibit Page 40 of 105
Case 21-10032 Doc 115-1 Filed in TXSB on 07/25/23 Page 37 of 53
EXHIBIT 1

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**Section 10.07 Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 10.08 No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 10.09 Amendment and Modification; Waiver.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 10.10 Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

(b) ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF TEXAS IN EACH CASE LOCATED IN THE CITY OF BROWNSVILLE AND COUNTY OF CAMERON, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. SERVICE OF PROCESS, SUMMONS, NOTICE OR OTHER DOCUMENT BY MAIL TO SUCH PARTY'S ADDRESS SET FORTH HEREIN SHALL BE EFFECTIVE SERVICE OF PROCESS FOR ANY SUIT, ACTION OR OTHER PROCEEDING BROUGHT IN ANY SUCH COURT. THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

(c) EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

LEGAL ACTION, (B) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (D) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 10.10(c).

**Section 10.11 Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 10.12 Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers or managers thereunto duly authorized.

**SELLER**
**A-PRO TOWING & RECOVERY, LLC**

DocuSigned by:
By: [signature]
EEA482A702CF4A4...
Name: Eduardo Pena
Title: Manager

**BUYER**
**A+ PRO RECOVERY AND TOWING LLC**

By: [signature]
Name: Erik Hager
Title: Managing Partner

REDACTED COPY - PAGES 67-71 REMOVED

Case 22-10132 Claim 2 Part 12 Filed 11/09/22 Desc Exhibit Page 42 of 105
EXHIBIT 1

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**EXHIBIT A**

**[Bill of Sale Begins on Following Page]**

REDACTED COPY - PAGES 67-71 REMOVED

Asset Purchase Agreement Page 28 of 77

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, A-Pro Towing & Recovery, LLC, a Texas limited liability company ("**Seller**"), does hereby grant, bargain, transfer, sell, assign, convey and deliver to A+ Pro Recovery and Towing LLC, a Texas limited liability company ("**Buyer**"), all of its right, title, and interest in and to the Tangible Personal Property, as such term is defined in the Asset Purchase Agreement, dated as of December 24, 2019 (the "**Purchase Agreement**"), by and between Seller and Buyer, to have and to hold the same unto Buyer, its successors and assigns, forever.

Buyer acknowledges that Seller makes no representation or warranty with respect to the assets being conveyed hereby except as specifically set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has duly executed this Bill of Sale as of December 24, 2019.

**SELLER**
**A-PRO TOWING & RECOVERY, LLC**

DocuSigned by:
By: ____________________
EEA482A702CF4A4...
Name: Eduardo Pena
Title: Manager

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# EXHIBIT B

**[Assignment and Assumption Begins on Following Page]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "**Agreement**"), effective as of December 24, 2019 (the "**Effective Date**"), is by and between A-Pro Towing & Recovery, LLC, a Texas limited liability company ("**Seller**") and A+ Pro Recovery and Towing LLC, a Texas limited liability company ("**Buyer**").

**WHEREAS**, Seller and Buyer have entered into a certain Asset Purchase Agreement, dated as of December 24, 2019 (the "**Purchase Agreement**"), pursuant to which, among other things, Seller has agreed to assign all of its rights, title and interests in, and Buyer has agreed to assume all of Seller's duties and obligations under, the Assigned Contracts (as defined in the Purchase Agreement).

**NOW, THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Definitions. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2. Assignment and Assumption. Seller hereby sells, assigns, grants, conveys and transfers to Buyer all of Seller's right, title and interest in and to the Assigned Contracts. Buyer hereby accepts such assignment and assumes all of Seller's duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of Seller under the Assigned Contracts accruing on and after the Effective Date.

3. Terms of the Purchase Agreement. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements and indemnities relating to the Assigned Contracts are incorporated herein by this reference. The parties hereto acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4. Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas.

5. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

6. Further Assurances. Each of the parties hereto shall execute and deliver, at the reasonable request of the other party hereto, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

[SIGNATURE PAGE FOLLOWS]

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first above written.

**SELLER**
**A-PRO TOWING & RECOVERY, LLC**

DocuSigned by:
By: ____________
EFA482A702CF4A4
Name: Eduardo Pena
Title: Manager

**BUYER**
**A+ PRO RECOVERY AND TOWING LLC**

By: ____________
Name: Erik Nagy
Title: Managing partner

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# EXHIBIT C

**[Promissory Note Begins on Following Page]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# PROMISSORY NOTE

$1,754,000.00

South Padre Island, Texas
Date: December 24, 2019

FOR VALUE RECEIVED, A+ Pro Recovery and Towing LLC, a Texas limited liability company (the "**Borrower**") hereby unconditionally promises to pay to the order of A-Pro Towing & Recovery, LLC, a Texas limited liability company (the "**Noteholder**") the principal amount of $1,754,000.00 (One Million Seven Hundred Fifty Four Thousand and No/100 Dollars) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**"). This Note is secured by a Security Agreement of even date herewith and further secured by a UCC-1 Financing Statement filed in the official records of Cameron County, Texas.

1. Payment Dates.

(a) Payment Dates. The Loan shall be payable on the **1st (first) day of each month** in accordance with the amortization schedule attached hereto as **Exhibit A** beginning on January 1, 2020.

(b) Prepayment. The Borrower may prepay the Loan in whole or in part at any time or from time to time without penalty or premium by paying the principal amount to be prepaid together with accrued interest thereon to the date of prepayment.

2. Interest.

(a) Interest Rate. Princpal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to **3%** (three percent).

(b) Default Interest. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus two percent (2%) (the "**Default Rate**").

(c) Computation of Interest. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Loan on January 01, 2020. On any portion of the Loan that is repaid, interest shall not accrue on the date on which such payment is made.

(d) Interest Rate Limitation. If at any time the interest rate payable on the Loan shall exceed the maximum rate of interest permitted under applicable law, such interest rate shall be reduced automatically to the maximum rate permitted.

3. Payment Mechanics.

(a) Manner of Payment. All payments of principal and interest shall be made in US dollars no later than 5:00 PM on the date on which such payment is due. Such payments shall be made by cashier's check or wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

(b) Application of Payments. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(c) Business Day. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in South Padre Island, Texas are authorized or required by law to close.

(d) Evidence of Debt. The Borrower authorizes the Noteholder to record on the grid attached as **Exhibit B** the Loan made to the Borrower and the date and amount of each payment or prepayment of the Loan. The entries made by the Noteholder shall be *prima facie* evidence of the existence and amount of the obligations of the Borrower recorded therein in the absence of manifest error. No failure to make any such record, nor any errors in making any such records, shall affect the validity of the Borrower's obligation to repay the unpaid principal of the Loan with interest in accordance with the terms of this Note.

4. Representations and Warranties. The Borrower represents and warrants to the Noteholder as follows:

(a) Existence. The Borrower is a limited liability company duly formed, validly existing, and in good standing under the laws of the state of its organization. The Borrower has the requisite power and authority to own, lease, and operate its property, and to carry on its business.

(b) Compliance with Law. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower, its property, and business.

(c) Power and Authority. The Borrower has the requisite power and authority to execute, deliver, and perform its obligations under this Note.

(d) Authorization; Execution and Delivery. The execution and delivery of this Note by the Borrower and the performance of its obligations hereunder have been duly authorized by all necessary limited liability action in accordance with applicable law. The Borrower has duly executed and delivered this Note.

5. Events of Default. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a) Failure to Pay. The Borrower fails to pay any principal, interest, or other amounts related to the Loan within seven (7) days from the payment date set forth in Section 1(a).

(b) Breach of Representations and Warranties. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made; *provided, however*, no Event of Default shall be deemed to have occurred pursuant to this Section 5(b) if, within thirty (30) days of the date on which the Borrower receives notice (from any source) of such untrue or misleading statement, Borrower shall have addressed the adverse effects of such untrue or misleading statement to the reasonable satisfaction of the Noteholder.

(c) Bankruptcy; Insolvency.

(i) The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

(ii) An involuntary case is commenced seeking the liquidation or reorganization of the Borrower under any law relating to bankruptcy or insolvency, and such case is not dismissed or vacated within sixty (60) days of its filing.

(iii) The Borrower makes a general assignment for the benefit of its creditors.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(iv) The Borrower is unable, or admits in writing its inability, to pay its debts as they become due.

(v) A case is commenced against the Borrower or its assets seeking attachment, execution, or similar process against all or a substantial part of its assets, and such case is not dismissed or vacated within sixty (60) days of its filing.

(d) Failure to Give Notice. The Borrower fails to give the notice of Event of Default specified in Section 6.

6. Notice of Event of Default. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within ten (10) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

7. Remedies. Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided, however*, if an Event of Default described in Sections 5(c)(i), (iii), or (iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

8. *Intentionally Omitted*.

9. Notices. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

If to Seller: A-Pro Towing & Recovery, LLC
________________________
________________________
E-mail:____________________
Attention: Eduardo Peña

If to Buyer: A+ Pro Recovery and Towing LLC
________________________
________________________
E-mail:____________________
Attention:____________________

10. Governing Law. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Texas.

11. Disputes.

(a) Submission to Jurisdiction.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

(i) The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Texas sitting in Cameron County, Texas, and (B) submits to the exclusive jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(ii) Nothing in this Section 11(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

(iii) Nothing in this Section 11(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

(b) Venue. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 11(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

(c) Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

12. Successors and Assigns. This Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity, with the prior written consent of Noteholder, such consent to be given or withheld in Noteholder's sole discretion.

13. Integration. This Note constitutes the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

14. Amendments and Waivers. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

15. No Waiver; Cumulative Remedies. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

16. Severability. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

17. Counterparts. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note in electronic format shall be as effective as delivery of a manually executed counterpart of this Note.

[signature page follows]

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

IN WITNESS WHEREOF, the Borrower has executed this Note as of 12/24/19.

**BORROWER**
**A+ PRO RECOVERY AND TOWING LLC**

By: [signature]
Name: Eri[illegible]
Title: Managing Partner

**ACKNOWLEDGED AND ACCEPTED**
**BY NOTEHOLDER**
**A-PRO TOWING & RECOVERY, LLC**

By: DocuSigned by: [signature] EEA482A702CF4A4...
Name: Eduardo Pena
Title: Manager

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# EXHIBIT A
# TO PROMISSORY NOTE

**Amortization Schedule**

**[Amortization Schedule Begins on Following Page]**

REDACTED COPY - PAGES 67-71 REMOVED

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Initial Balance: | 1,754,000.00 | | Total Borrowed: | | 1,754,000.00 |
| | | Loan Start Date: | 1/1/2020 | | Total Interest Paid: | | 321,610.41 |
| | | Payment Number | Starting Balance | Rate | Payment Made | Interest Accrued | Balance Post-Payment |
| 2020 | | 1 | 1,754,000.00 | | 25,000.00 | 0.00 | 1,729,000.00 |
| 1 | 1 | 2 | 1,729,000.00 | 3.0% | 0.00 | 4,322.50 | 1,733,322.50 |
| 2 | 2 | 3 | 1,733,322.50 | 3.0% | 0.00 | 4,333.31 | 1,737,655.81 |
| 3 | 3 | 4 | 1,737,655.81 | 3.0% | 0.00 | 4,344.14 | 1,741,999.95 |
| | | 5 | 1,741,999.95 | | 20,000.00 | 0.00 | 1,721,999.95 |
| 4 | 4 | 6 | 1,721,999.95 | 3.0% | 8,500.00 | 4,305.00 | 1,717,804.95 |
| 5 | 5 | 7 | 1,717,804.95 | 3.0% | 8,500.00 | 4,294.51 | 1,713,599.46 |
| 6 | 6 | 8 | 1,713,599.46 | 3.0% | 8,500.00 | 4,284.00 | 1,709,383.46 |
| | | 9 | 1,709,383.46 | | 20,000.00 | 0.00 | 1,689,383.46 |
| 7 | 7 | 10 | 1,689,383.46 | 3.0% | 8,500.00 | 4,223.46 | 1,685,106.92 |
| 8 | 8 | 11 | 1,685,106.92 | 3.0% | 8,500.00 | 4,212.77 | 1,680,819.68 |
| 9 | 9 | 12 | 1,680,819.68 | 3.0% | 8,500.00 | 4,202.05 | 1,676,521.73 |
| | | 13 | 1,676,521.73 | | 20,000.00 | 0.00 | 1,656,521.73 |
| 10 | 10 | 14 | 1,656,521.73 | 3.0% | 8,500.00 | 4,141.30 | 1,652,163.04 |
| 11 | 11 | 15 | 1,652,163.04 | 3.0% | 8,500.00 | 4,130.41 | 1,647,793.44 |
| 12 | 12 | 16 | 1,647,793.44 | 3.0% | 8,500.00 | 4,119.48 | 1,643,412.93 |
| 2021 | | 17 | 1,643,412.93 | | 20,000.00 | 0.00 | 1,623,412.93 |
| 1 | 13 | 18 | 1,623,412.93 | 3.0% | 8,500.00 | 4,058.53 | 1,618,971.46 |
| 2 | 14 | 19 | 1,618,971.46 | 3.0% | 8,500.00 | 4,047.43 | 1,614,518.89 |
| 3 | 15 | 20 | 1,614,518.89 | 3.0% | 8,500.00 | 4,036.30 | 1,610,055.19 |
| | | 21 | 1,610,055.19 | | 20,000.00 | 0.00 | 1,590,055.19 |
| 4 | 16 | 22 | 1,590,055.19 | 3.0% | 8,500.00 | 3,975.14 | 1,585,530.32 |
| 5 | 17 | 23 | 1,585,530.32 | 3.0% | 8,500.00 | 3,963.83 | 1,580,994.15 |
| 6 | 18 | 24 | 1,580,994.15 | 3.0% | 8,500.00 | 3,952.49 | 1,576,446.63 |
| | | 25 | 1,576,446.63 | | 20,000.00 | 0.00 | 1,556,446.63 |
| 7 | 19 | 26 | 1,556,446.63 | 3.0% | 8,500.00 | 3,891.12 | 1,551,837.75 |
| 8 | 20 | 27 | 1,551,837.75 | 3.0% | 8,500.00 | 3,879.59 | 1,547,217.35 |
| 9 | 21 | 28 | 1,547,217.35 | 3.0% | 8,500.00 | 3,868.04 | 1,542,585.39 |
| | | 29 | 1,542,585.39 | | 20,000.00 | 0.00 | 1,522,585.39 |
| 10 | 22 | 30 | 1,522,585.39 | 3.0% | 8,500.00 | 3,806.46 | 1,517,891.85 |
| 11 | 23 | 31 | 1,517,891.85 | 3.0% | 8,500.00 | 3,794.73 | 1,513,186.58 |
| 12 | 24 | 32 | 1,513,186.58 | 3.0% | 8,500.00 | 3,782.97 | 1,508,469.55 |
| 2022 | | 33 | 1,508,469.55 | | 20,000.00 | 0.00 | 1,488,469.55 |
| 1 | 25 | 34 | 1,488,469.55 | 3.0% | 8,500.00 | 3,721.17 | 1,483,690.72 |
| 2 | 26 | 35 | 1,483,690.72 | 3.0% | 8,500.00 | 3,709.23 | 1,478,899.95 |
| 3 | 27 | 36 | 1,478,899.95 | 3.0% | 8,500.00 | 3,697.25 | 1,474,097.20 |
| | | 37 | 1,474,097.20 | | 20,000.00 | 0.00 | 1,454,097.20 |
| 4 | 28 | 38 | 1,454,097.20 | 3.0% | 8,500.00 | 3,635.24 | 1,449,232.44 |
| 5 | 29 | 39 | 1,449,232.44 | 3.0% | 8,500.00 | 3,623.08 | 1,444,355.52 |
| 6 | 30 | 40 | 1,444,355.52 | 3.0% | 8,500.00 | 3,610.89 | 1,439,466.41 |
| | | 41 | 1,439,466.41 | | 20,000.00 | 0.00 | 1,419,466.41 |
| 7 | 31 | 42 | 1,419,466.41 | 3.0% | 8,500.00 | 3,548.67 | 1,414,515.08 |
| 8 | 32 | 43 | 1,414,515.08 | 3.0% | 8,500.00 | 3,536.29 | 1,409,551.37 |
| 9 | 33 | 44 | 1,409,551.37 | 3.0% | 8,500.00 | 3,523.88 | 1,404,575.24 |
| | | 45 | 1,404,575.24 | | 20,000.00 | 0.00 | 1,384,575.24 |
| 10 | 34 | 46 | 1,384,575.24 | 3.0% | 8,500.00 | 3,461.44 | 1,379,536.68 |
| 11 | 35 | 47 | 1,379,536.68 | 3.0% | 8,500.00 | 3,448.84 | 1,374,485.52 |
| 12 | 36 | 48 | 1,374,485.52 | 3.0% | 8,500.00 | 3,436.21 | 1,369,421.74 |
| 2023 | | 49 | 1,369,421.74 | | 20,000.00 | 0.00 | 1,349,421.74 |
| 1 | 37 | 50 | 1,349,421.74 | 3.0% | 8,500.00 | 3,373.55 | 1,344,295.29 |
| 2 | 38 | 51 | 1,344,295.29 | 3.0% | 8,500.00 | 3,360.74 | 1,339,156.03 |
| 3 | 39 | 52 | 1,339,156.03 | 3.0% | 8,500.00 | 3,347.89 | 1,334,003.92 |
| | | 53 | 1,334,003.92 | | 20,000.00 | 0.00 | 1,314,003.92 |
| 4 | 40 | 54 | 1,314,003.92 | 3.0% | 8,500.00 | 3,285.01 | 1,308,788.93 |
| 5 | 41 | 55 | 1,308,788.93 | 3.0% | 8,500.00 | 3,271.97 | 1,303,560.90 |
| 6 | 42 | 56 | 1,303,560.90 | 3.0% | 8,500.00 | 3,258.90 | 1,298,319.80 |
| | | 57 | 1,298,319.80 | | 20,000.00 | 0.00 | 1,278,319.80 |
| 7 | 43 | 58 | 1,278,319.80 | 3.0% | 8,500.00 | 3,195.80 | 1,273,015.60 |
| 8 | 44 | 59 | 1,273,015.60 | 3.0% | 8,500.00 | 3,182.54 | 1,267,698.14 |
| 9 | 45 | 60 | 1,267,698.14 | 3.0% | 8,500.00 | 3,169.25 | 1,262,367.39 |
| | | 61 | 1,262,367.39 | | 20,000.00 | 0.00 | 1,242,367.39 |
| 10 | 46 | 62 | 1,242,367.39 | 3.0% | 8,500.00 | 3,105.92 | 1,236,973.31 |
| 11 | 47 | 63 | 1,236,973.31 | 3.0% | 8,500.00 | 3,092.43 | 1,231,565.74 |
| 12 | 48 | 64 | 1,231,565.74 | 3.0% | 8,500.00 | 3,078.91 | 1,226,144.65 |
| 2024 | | 65 | 1,226,144.65 | | 20,000.00 | 0.00 | 1,206,144.65 |
| 1 | 49 | 66 | 1,206,144.65 | 3.0% | 8,500.00 | 3,015.36 | 1,200,660.02 |
| 2 | 50 | 67 | 1,200,660.02 | 3.0% | 8,500.00 | 3,001.65 | 1,195,161.67 |
| 3 | 51 | 68 | 1,195,161.67 | 3.0% | 8,500.00 | 2,987.90 | 1,189,649.57 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

| | | Initial Balance: | 1,754,000.00 | | Total Borrowed: | | 1,754,000.00 |
|---|---|---|---|---|---|---|---|
| | | Loan Start Date: | 1/1/2020 | | Total Interest Paid: | | 321,610.41 |
| | | | | | | | |
| | | Payment Number | Starting Balance | Rate | Payment Made | Interest Accrued | Balance Post-Payment |
| | | 69 | 1,189,649.57 | | 20,000.00 | 0.00 | 1,169,649.57 |
| 4 | 52 | 70 | 1,169,649.57 | 3.0% | 8,500.00 | 2,924.12 | 1,164,073.69 |
| 5 | 53 | 71 | 1,164,073.69 | 3.0% | 8,500.00 | 2,910.18 | 1,158,483.88 |
| 6 | 54 | 72 | 1,158,483.88 | 3.0% | 8,500.00 | 2,896.21 | 1,152,880.09 |
| | | 73 | 1,152,880.09 | | 20,000.00 | 0.00 | 1,132,880.09 |
| 7 | 55 | 74 | 1,132,880.09 | 3.0% | 8,500.00 | 2,832.20 | 1,127,212.29 |
| 8 | 56 | 75 | 1,127,212.29 | 3.0% | 8,500.00 | 2,818.03 | 1,121,530.32 |
| 9 | 57 | 76 | 1,121,530.32 | 3.0% | 8,500.00 | 2,803.83 | 1,115,834.15 |
| | | 77 | 1,115,834.15 | | 20,000.00 | 0.00 | 1,095,834.15 |
| 10 | 58 | 78 | 1,095,834.15 | 3.0% | 8,500.00 | 2,739.59 | 1,090,073.73 |
| 11 | 59 | 79 | 1,090,073.73 | 3.0% | 8,500.00 | 2,725.18 | 1,084,298.91 |
| 12 | 60 | 80 | 1,084,298.91 | 3.0% | 8,500.00 | 2,710.75 | 1,078,509.66 |
| 2025 | | 81 | 1,078,509.66 | | 20,000.00 | 0.00 | 1,058,509.66 |
| 1 | 61 | 82 | 1,058,509.66 | 3.0% | 8,500.00 | 2,646.27 | 1,052,655.94 |
| 2 | 62 | 83 | 1,052,655.94 | 3.0% | 8,500.00 | 2,631.64 | 1,046,787.58 |
| 3 | 63 | 84 | 1,046,787.58 | 3.0% | 8,500.00 | 2,616.97 | 1,040,904.55 |
| | | 85 | 1,040,904.55 | | 20,000.00 | 0.00 | 1,020,904.55 |
| 4 | 64 | 86 | 1,020,904.55 | 3.0% | 8,500.00 | 2,552.26 | 1,014,956.81 |
| 5 | 65 | 87 | 1,014,956.81 | 3.0% | 8,500.00 | 2,537.39 | 1,008,994.20 |
| 6 | 66 | 88 | 1,008,994.20 | 3.0% | 8,500.00 | 2,522.49 | 1,003,016.68 |
| | | 89 | 1,003,016.68 | | 20,000.00 | 0.00 | 983,016.68 |
| 7 | 67 | 90 | 983,016.68 | 3.0% | 8,500.00 | 2,457.54 | 976,974.23 |
| 8 | 68 | 91 | 976,974.23 | 3.0% | 8,500.00 | 2,442.44 | 970,916.66 |
| 9 | 69 | 92 | 970,916.66 | 3.0% | 8,500.00 | 2,427.29 | 964,843.95 |
| | | 93 | 964,843.95 | | 20,000.00 | 0.00 | 944,843.95 |
| 10 | 70 | 94 | 944,843.95 | 3.0% | 8,500.00 | 2,362.11 | 938,706.06 |
| 11 | 71 | 95 | 938,706.06 | 3.0% | 8,500.00 | 2,346.77 | 932,552.83 |
| 12 | 72 | 96 | 932,552.83 | 3.0% | 8,500.00 | 2,331.38 | 926,384.21 |
| 2026 | | 97 | 926,384.21 | | 20,000.00 | 0.00 | 906,384.21 |
| 1 | 73 | 98 | 906,384.21 | 3.0% | 8,500.00 | 2,265.96 | 900,150.17 |
| 2 | 74 | 99 | 900,150.17 | 3.0% | 8,500.00 | 2,250.38 | 893,900.55 |
| 3 | 75 | 100 | 893,900.55 | 3.0% | 8,500.00 | 2,234.75 | 887,635.30 |
| | | 101 | 887,635.30 | | 20,000.00 | 0.00 | 867,635.30 |
| 4 | 76 | 102 | 867,635.30 | 3.0% | 8,500.00 | 2,169.09 | 861,304.39 |
| 5 | 77 | 103 | 861,304.39 | 3.0% | 8,500.00 | 2,153.26 | 854,957.65 |
| 6 | 78 | 104 | 854,957.65 | 3.0% | 8,500.00 | 2,137.39 | 848,595.04 |
| | | 105 | 848,595.04 | | 20,000.00 | 0.00 | 828,595.04 |
| 7 | 79 | 106 | 828,595.04 | 3.0% | 8,500.00 | 2,071.49 | 822,166.53 |
| 8 | 80 | 107 | 822,166.53 | 3.0% | 8,500.00 | 2,055.42 | 815,721.94 |
| 9 | 81 | 108 | 815,721.94 | 3.0% | 8,500.00 | 2,039.30 | 809,261.25 |
| | | 109 | 809,261.25 | | 20,000.00 | 0.00 | 789,261.25 |
| 10 | 82 | 110 | 789,261.25 | 3.0% | 8,500.00 | 1,973.15 | 782,734.40 |
| 11 | 83 | 111 | 782,734.40 | 3.0% | 8,500.00 | 1,956.84 | 776,191.24 |
| 12 | 84 | 112 | 776,191.24 | 3.0% | 8,500.00 | 1,940.48 | 769,631.72 |
| 2027 | | 113 | 769,631.72 | | 20,000.00 | 0.00 | 749,631.72 |
| 1 | 85 | 114 | 749,631.72 | 3.0% | 8,500.00 | 1,874.08 | 743,005.80 |
| 2 | 86 | 115 | 743,005.80 | 3.0% | 8,500.00 | 1,857.51 | 736,363.31 |
| 3 | 87 | 116 | 736,363.31 | 3.0% | 8,500.00 | 1,840.91 | 729,704.22 |
| | | 117 | 729,704.22 | | 20,000.00 | 0.00 | 709,704.22 |
| 4 | 88 | 118 | 709,704.22 | 3.0% | 8,500.00 | 1,774.26 | 702,978.48 |
| 5 | 89 | 119 | 702,978.48 | 3.0% | 8,500.00 | 1,757.45 | 696,235.93 |
| 6 | 90 | 120 | 696,235.93 | 3.0% | 8,500.00 | 1,740.59 | 689,476.52 |
| | | 121 | 689,476.52 | | 20,000.00 | 0.00 | 669,476.52 |
| 7 | 91 | 122 | 669,476.52 | 3.0% | 8,500.00 | 1,673.69 | 662,650.21 |
| 8 | 92 | 123 | 662,650.21 | 3.0% | 8,500.00 | 1,656.63 | 655,806.83 |
| 9 | 93 | 124 | 655,806.83 | 3.0% | 8,500.00 | 1,639.52 | 648,946.35 |
| | | 125 | 648,946.35 | | 20,000.00 | 0.00 | 628,946.35 |
| 10 | 94 | 126 | 628,946.35 | 3.0% | 8,500.00 | 1,572.37 | 622,018.72 |
| 11 | 95 | 127 | 622,018.72 | 3.0% | 8,500.00 | 1,555.05 | 615,073.76 |
| 12 | 96 | 128 | 615,073.76 | 3.0% | 8,500.00 | 1,537.68 | 608,111.45 |
| 2028 | | 129 | 608,111.45 | | 20,000.00 | 0.00 | 588,111.45 |
| 1 | 97 | 130 | 588,111.45 | 3.0% | 8,500.00 | 1,470.28 | 581,081.72 |
| 2 | 98 | 131 | 581,081.72 | 3.0% | 8,500.00 | 1,452.70 | 574,034.43 |
| 3 | 99 | 132 | 574,034.43 | 3.0% | 8,500.00 | 1,435.09 | 566,969.52 |
| | | 133 | 566,969.52 | | 20,000.00 | 0.00 | 546,969.52 |
| 4 | 100 | 134 | 546,969.52 | 3.0% | 8,500.00 | 1,367.42 | 539,836.94 |
| 5 | 101 | 135 | 539,836.94 | 3.0% | 8,500.00 | 1,349.59 | 532,686.53 |
| 6 | 102 | 136 | 532,686.53 | 3.0% | 8,500.00 | 1,331.72 | 525,518.25 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

| | | Initial Balance: | 1,754,000.00 | | Total Borrowed: | | 1,754,000.00 |
|---|---|---|---|---|---|---|---|
| | | Loan Start Date: | 1/1/2020 | | Total Interest Paid: | | 321,610.41 |
| | | Payment Number | Starting Balance | Rate | Payment Made | Interest Accrued | Balance Post-Payment |
| | | 137 | 525,518.25 | | 20,000.00 | 0.00 | 505,518.25 |
| 7 | 103 | 138 | 505,518.25 | 3.0% | 8,500.00 | 1,263.80 | 498,282.04 |
| 8 | 104 | 139 | 498,282.04 | 3.0% | 8,500.00 | 1,245.71 | 491,027.75 |
| 9 | 105 | 140 | 491,027.75 | 3.0% | 8,500.00 | 1,227.57 | 483,755.32 |
| | | 141 | 483,755.32 | | 20,000.00 | 0.00 | 463,755.32 |
| 10 | 106 | 142 | 463,755.32 | 3.0% | 8,500.00 | 1,159.39 | 456,414.71 |
| 11 | 107 | 143 | 456,414.71 | 3.0% | 8,500.00 | 1,141.04 | 449,055.74 |
| 12 | 108 | 144 | 449,055.74 | 3.0% | 8,500.00 | 1,122.64 | 441,678.38 |
| 2029 | | 145 | 441,678.38 | | 20,000.00 | 0.00 | 421,678.38 |
| 1 | 109 | 146 | 421,678.38 | 3.0% | 8,500.00 | 1,054.20 | 414,232.58 |
| 2 | 110 | 147 | 414,232.58 | 3.0% | 8,500.00 | 1,035.58 | 406,768.16 |
| 3 | 111 | 148 | 406,768.16 | 3.0% | 8,500.00 | 1,016.92 | 399,285.08 |
| | | 149 | 399,285.08 | | 20,000.00 | 0.00 | 379,285.08 |
| 4 | 112 | 150 | 379,285.08 | 3.0% | 8,500.00 | 948.21 | 371,733.29 |
| 5 | 113 | 151 | 371,733.29 | 3.0% | 8,500.00 | 929.33 | 364,162.63 |
| 6 | 114 | 152 | 364,162.63 | 3.0% | 8,500.00 | 910.41 | 356,573.03 |
| | | 153 | 356,573.03 | | 20,000.00 | 0.00 | 336,573.03 |
| 7 | 115 | 154 | 336,573.03 | 3.0% | 8,500.00 | 841.43 | 328,914.47 |
| 8 | 116 | 155 | 328,914.47 | 3.0% | 8,500.00 | 822.29 | 321,236.75 |
| 9 | 117 | 156 | 321,236.75 | 3.0% | 8,500.00 | 803.09 | 313,539.84 |
| | | 157 | 313,539.84 | | 20,000.00 | 0.00 | 293,539.84 |
| 10 | 118 | 158 | 293,539.84 | 3.0% | 8,500.00 | 733.85 | 285,773.69 |
| 11 | 119 | 159 | 285,773.69 | 3.0% | 8,500.00 | 714.43 | 277,988.13 |
| 12 | 120 | 160 | 277,988.13 | 3.0% | 8,500.00 | 694.97 | 270,183.10 |
| 2030 | | 161 | 270,183.10 | | 20,000.00 | 0.00 | 250,183.10 |
| 1 | 121 | 162 | 250,183.10 | 3.0% | 8,500.00 | 625.46 | 242,308.56 |
| 2 | 122 | 163 | 242,308.56 | 3.0% | 8,500.00 | 605.77 | 234,414.33 |
| 3 | 123 | 164 | 234,414.33 | 3.0% | 8,500.00 | 586.04 | 226,500.36 |
| | | 165 | 226,500.36 | | 20,000.00 | 0.00 | 206,500.36 |
| 4 | 124 | 166 | 206,500.36 | 3.0% | 8,500.00 | 516.25 | 198,516.61 |
| 5 | 125 | 167 | 198,516.61 | 3.0% | 8,500.00 | 496.29 | 190,512.90 |
| 6 | 126 | 168 | 190,512.90 | 3.0% | 8,500.00 | 476.28 | 182,489.19 |
| | | 169 | 182,489.19 | | 20,000.00 | 0.00 | 162,489.19 |
| 7 | 127 | 170 | 162,489.19 | 3.0% | 8,500.00 | 406.22 | 154,395.41 |
| 8 | 128 | 171 | 154,395.41 | 3.0% | 8,500.00 | 385.99 | 146,281.40 |
| 9 | 129 | 172 | 146,281.40 | 3.0% | 8,500.00 | 365.70 | 138,147.10 |
| | | 173 | 138,147.10 | | 20,000.00 | 0.00 | 118,147.10 |
| 10 | 130 | 174 | 118,147.10 | 3.0% | 8,500.00 | 295.37 | 109,942.47 |
| 11 | 131 | 175 | 109,942.47 | 3.0% | 8,500.00 | 274.86 | 101,717.33 |
| 12 | 132 | 176 | 101,717.33 | 3.0% | 8,500.00 | 254.29 | 93,471.62 |
| 2031 | | 177 | 93,471.62 | | 20,000.00 | 0.00 | 73,471.62 |
| 1 | 133 | 178 | 73,471.62 | 3.0% | 8,500.00 | 183.68 | 65,155.30 |
| 2 | 134 | 179 | 65,155.30 | 3.0% | 8,500.00 | 162.89 | 56,818.19 |
| 3 | 135 | 180 | 56,818.19 | 3.0% | 8,500.00 | 142.05 | 48,460.23 |
| | | 181 | 48,460.23 | | 20,000.00 | 0.00 | 28,460.23 |
| 4 | 136 | 182 | 28,460.23 | 3.0% | 8,500.00 | 71.15 | 20,031.38 |
| 5 | 137 | 183 | 20,031.38 | 3.0% | 8,500.00 | 50.08 | 11,581.46 |
| 6 | 138 | 184 | 11,581.46 | 3.0% | 8,500.00 | 28.95 | 3,110.41 |
| | | 185 | 3,110.41 | | 3,110.42 | 0.00 | (0.01) |
| 7 | 139 | | | | | | |
| 8 | 140 | | | | | | |
| 9 | 141 | | | | | | |
| 10 | 142 | | | | | | |
| 11 | 143 | | | | | | |
| 12 | 144 | | | | | | |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**EXHIBIT B**
**TO PROMISSORY NOTE**

**Payments on the Loan**

| Date | Principal Amount Paid | Unpaid Principal Balance | Name of Person Making Notation |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# EXHIBIT D

**[Security Agreement Begins on Following Page]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of December 24, 2019 (as amended, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "**Agreement**"), is made by and among A+ Pro Recovery and Towing LLC, a Texas limited liability company (the "**Grantor**"), in favor of A-Pro Towing & Recovery, LLC, a Texas limited liability company (the "**Secured Party**").

WHEREAS, on the date hereof, the Grantor has entered into an Asset Purchase Agreement and Promissory Note (collectively, as amended, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), with the Secured Party, pursuant to which the Secured Party, subject to the terms and conditions contained therein, is extending credit to the Grantor; and

WHEREAS, under the terms of this Agreement, the Grantor desires to grant to the Secured Party a security interest in the Collateral, as defined herein, to secure any and all Secured Obligations, as defined herein.

NOW THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. DEFINITIONS. All capitalized terms used herein without definitions shall have the respective meanings set forth in the Loan Agreement. Unless otherwise defined herein, terms used herein that are defined in the Uniform Commercial Code as in effect from time to time in the State of Texas (the "**UCC**") shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

2. GRANT OF SECURITY INTEREST.

(a) For value received, the Grantor hereby grants to the Secured Party, to secure the payment and performance in full of all of the Secured Obligations (as defined in Section 3 of this Agreement), a security interest in and pledges and assigns to the Secured Party the following properties, assets, and rights of the Grantor, wherever located, whether the Grantor now has or hereafter acquires an ownership or other interest or power to transfer, and all proceeds and products thereof, and all books and records relating thereto (all of the same being hereinafter called the "**Collateral**"): all personal and fixture property of every kind and nature including all goods (including inventory, vehicles, equipment, and any accessions thereto), instruments (including promissory notes), documents (whether tangible or electronic), accounts, chattel paper (whether tangible or electronic), money, deposit accounts, letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, supporting obligations, and other contracts rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles (including all payment intangibles).

(b) If the Grantor shall at any time hold or acquire a commercial tort claim, the Grantor shall immediately notify the Secured Party in writing of the details thereof and grant to the Secured Party in such writing, in form and substance satisfactory to the Secured Party, a security interest therein and in the proceeds thereof.

3. SECURED OBLIGATIONS. This Agreement secures the prompt and full performance and payment of all of the indebtedness, obligations, liabilities, and undertakings of the Grantor to the Secured Party, of any kind or description, individually or collectively, whether direct or indirect, joint or several, absolute or contingent, due or to become due, voluntary or involuntary, now existing or hereafter arising (including, all interest, fees (including attorneys' fees), costs, and expenses that the Grantor is hereby or otherwise required to pay and perform pursuant to the Loan Agreement, this Agreement, or any other Loan Document, by law or otherwise accruing before and after the filing of any petition in bankruptcy or the commencement of any insolvency, reorganization or like proceeding relating to the Grantor, whether or not a claim for post-petition interest, fees or expenses is allowed in such proceeding), irrespective of whether for the payment of money, under or in respect of the Loan Agreement, this

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

Agreement, or any other Loan Document, including instruments or agreements executed and delivered pursuant thereto or in connection therewith (the "**Secured Obligations**").

4. CHANGES IN LOCATION OF COLLATERAL. The Grantor hereby agrees to notify the Secured Party, in writing or via electronic communication, **within one (1) business day**, upon any change in the location of any Collateral and provide the Secured Party with the new location of such Collateral.

5. CHANGES IN GRANTOR. The Grantor hereby agrees to notify the Secured Party, in writing or via electronic communication, at least **three (3) business days** before any of the following actions: (a) change in the location of the Grantor's place of business; (b) change in the Grantor's name; (c) change in the Grantor's type of organization; (d) change in the Grantor's jurisdiction of organization; and (e) change in the Grantor's corporate structure.

6. TRANSFER OF COLLATERAL. The Grantor shall not sell, offer to sell, assign, lease, license, or otherwise transfer, or grant, create, permit, or suffer to exist any option, security interest, lien, or other encumbrance in, any part of the Collateral (except for sales or leases of inventory or licenses of general intangibles in the ordinary course of business), without prior written approval from the Secured Party. Notwithstanding the foregoing, Grantor may sell any part of the Collateral (the "Sold Collateral") without Secured Party's prior written consent provided the following requirements are satisfied: (a) Grantor's sale of the Sold Collateral is done in the ordinary course of business; (b) Grantor acquires replacement collateral of like kind and equal or greater value within forty-five (45) days of the sale date; and (c) Grantor provides the Secured Party with written notice of (i) the sale within three (3) business days of the sale date, and (ii) the acquisition of replacement collateral within three (3) business days of the acquisition date.

7. GRANTOR REPRESENTATIONS AND WARRANTIES. The Grantor hereby represents, warrants, and covenants that: (a) the Grantor owns or has good and marketable title to the Collateral and no other person or organization can make any claim of ownership of any kind on the Collateral; (b) the Grantor has the full power, authority and legal right to grant the security interest in the Collateral; (c) the Collateral is free from any and all claims, encumbrances, rights of setoff or any other security interest or lien of any kind except for the security interest in favor of the Secured Party created by this Agreement and (d) this Agreement creates in favor of the Secured Party a valid security interest in the Collateral, securing payment of the Secured Obligations, and such security interest is first priority. The Grantor will defend the Collateral against all claims and demands made by all persons claiming either the Collateral or any interest in it.

8. GRANTOR COVENANTS AND INSURANCE. The Grantor hereby grants to the Secured Party the right to enter the Grantor's property to inspect the Collateral at any reasonable time, provided that the Secured Party gives the Grantor notice within two (2) business days of any inspection, however in no case shall notice be required if the Secured Party enters the Grantor's property for the purposes of remedying a breach of this Agreement as provided in Section 10 of this Agreement. The Grantor agrees to: (a) maintain the Collateral in good order, repair, and condition at all times; (b) timely pay all taxes, judgments, levies, fees, or charges of any kind levied or assessed on the Collateral; (c) timely pay all rent or mortgage payments of any kind as applicable to any real property upon which any part of the Collateral is located; and (d) have and maintain at all times a hazard insurance policy on the Collateral underwritten by an insurance company, and in an amount, approved by the Secured Party, but in no way shall the amount of insurance be less than the replacement cost of the Collateral. The insurance procured in this Section shall contain a standard Lender's Loss Payable Clause in favor of the Secured Party, and provide that the Secured Party will receive at least thirty (30) days' notice of any cancellation of the policy. The Grantor hereby assigns to the Secured Party all rights to any proceeds of any insurance procured under this Section or otherwise, and authorizes the Secured Party to receive such payments and execute any and all documents required to receive such payments. If the Grantor fails to provide for the insurance as set out in this Section, the Secured Party, in addition to any remedies as set out in Section 10 of this Agreement, may procure the requisite insurance on the Collateral on its own behalf and charge the Grantor with any and all costs of such procurement.

9. PERFECTION OF SECURITY INTEREST. The Grantor agrees that at any time and from time to time, at the expense of the Grantor, the Grantor will promptly execute and deliver all further

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that the Secured Party may request, in order to create and/or maintain the validity, perfection or priority of and protect any security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to any Collateral. The Grantor hereby authorizes the Secured Party to file or record any document necessary to perfect, continue, amend, or terminate its security interest in the Collateral, including, but not limited to, any financing statements, including amendments, authorized to be filed under the UCC, without signature of the Grantor where permitted by law, including the filing of a financing statement describing the Collateral as all assets now owned or hereafter acquired by the Grantor, or words of similar effect. The Grantor also hereby ratifies any previously filed documents or recordings regarding the Collateral, including but not limited to, any and all previously filed financing statements.

10. REMEDIES. If any Grantor breach of this Agreement (or Event of Default or other material breach under the Loan Agreement) shall have occurred and be continuing, the Secured Party may do any or all of the following: (a) declare all Secured Obligations immediately due and payable; (b) enter the Grantor's property where the Collateral is located and take possession of the Collateral without demand or legal process; (c) require the Grantor to make available the Collateral at a specific time and place designated by the Secured Party; (d) sell, lease, or otherwise dispose of the Collateral at any public or private sale in accordance with the law; and (e) enforce payment of the Secured Obligations and exercise any rights and remedies available to the Secured Party under law, including, but not limited to, those rights and remedies available to the Secured Party under Article 9 of the UCC.

11. SECURED PARTY RIGHTS. Any and all rights of the Secured Party provided by this Agreement are in addition to any and all rights available to the Secured Party by law, and shall be cumulative and may be exercised simultaneously. No delay, omission, or failure on the part of the Secured Party to exercise or enforce any of its rights or remedies, either granted under this Agreement or by law, shall constitute an estoppel or waiver of such right or remedy or any other right or remedy. Any and all rights of the Secured Party provided by this Agreement shall inure to the benefit of its successors and assigns.

12. SEVERABILITY AND MODIFICATION. If any of the provisions in this Agreement is determined to be invalid, illegal, or unenforceable, such determination shall not affect the validity, legality, or enforceability of the other provisions in this Agreement. No waiver, modification or amendment of, or any other change to, this Agreement will be effective unless done so in a separate writing signed by the Secured Party.

13. NOTICES. Any notice or other communication required or permitted to be given under this Agreement, including, without limitation, notices under Section 4 and Section 5 of this Agreement, shall be given and shall become effective in accordance with the Loan Agreement.

14. ENTIRE AGREEMENT. This Agreement (including all documents referred to herein) represents the entire agreement between the Grantor and the Secured Party, and supersedes all previous understandings and agreements between the Grantor and the Secured Party, whether oral or written, regarding the subject matter hereof.

15. JURISDICTION. This Agreement will be interpreted and construed according to the laws of the State of Texas, including, but not limited to, the UCC, without regard to choice-of-law rules in any jurisdiction.

**[Signature Page Follows]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

IN WITNESS WHEREOF, the undersigned Grantor and Secured Party have executed this Security Agreement as of the date first above written.

**GRANTOR**
**A+ PRO RECOVERY AND TOWING LLC, as Grantor**

By: ______________________

Name: Erik Haag

Title: Managing Partner

**SECURED PARTY**
**A-PRO TOWING & RECOVERY, LLC, as Secured Party**

DocuSigned by:
By: ______________________
EEA482A70CF4A4

Name: Eduardo Pena

Title: Manager

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# EXHIBIT E

**[Commercial Sublease Agreement Begins on Following Page]**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## *COMMERCIAL SUBLEASE AGREEMENT*

This Sublease Agreement (the "Sublease") is made effective as of January 01, 2020, by and between A-Pro Towing & Recovery, LLC ("Tenant"), and A+Pro Recovery & Towing LLC, Eric Hager, Principal and Jody McIntyre, Principal ("Subtenant"). Tenant has previously entered into a lease agreement with Orlando Ochoa ("Landlord") dated January 01, 2016 (the "Prime Lease"). The Tenant now desires to sublet the leased property to the Subtenant and the Subtenant desires to sublet the leased property from the Tenant. Therefore, the parties agree as follows:

**PREMISES.** Tenant, in consideration of the sublease payments provided in this Agreement, sublets to Subtenant Office Building known as 1515 Padre Blvd. Unit C Approximately 2500 sq ft office building located at 1515 Padre Blvd. Suite C, South Padre Island, Texas 78597 (the "Premises").

**TERM AND POSSESSION.** The term of this Sublease will begin on January 01, 2020 and unless terminated sooner pursuant to the terms of this Sublease, it will continue for the remainder of the term provided in the Prime Lease, which terminates December 30, 2026. Subtenant's tenancy will terminate on December 30, 2026, unless Landlord and Subtenant sign another written agreement prior to the end of tenancy providing for an additional period of tenancy. Subtenant is not responsible for finding a replacement upon the termination of his or her tenancy.

**SUBLEASE PAYMENTS.** Subtenant shall pay to Landlord sublease payments of $2,500.00 per month, payable in advance on the first day of each month, for a total sublease payment of $180,000.00. Sublease payments shall be made to Landlord at 1515 Padre Blvd Suite C, South Padre Island, Texas 78597, which may be changed from time to time by Landlord. The Landlord will pick up the lease payment in person on a monthly basis. A late fee of $25.00 daily will be incurred if the monthly lease payment is not received by the 03rd day of the month.

**NOTICE.** Notices under this Sublease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows to every interested party:

**<u>TENANT:</u>**

A-Pro Towing & Recovery, LLC
2216 Padre Blvd Suite B-185
South Padre Island, Texas 78597

This is a RocketLawyer.com document.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**SUBTENANT:**

A+Pro Recovery & Towing, LLC
Eric Hager, Principal
2216 Padre Blvd. Suite B #453
South Padre Island, Texas 78597

**SUBTENANT:**

A+Pro Recovery & Towing, LLC
Jody McIntyre, Principal
2216 Padre Blvd. Suite B #453
South Padre Island, Texas 78597

**LANDLORD:**

Orlando Ochoa
1515 Padre Blvd
South Padre Island, Texas 78597

Such addresses may be changed from time to time by any party by providing notice to the other interested parties as described above.

**GOVERNING LAW.** This Sublease shall be construed in accordance with the laws of the State of Texas.

**INCORPORATION OF PRIME LEASE.** This Sublease is subject to all of the terms of the Prime Lease with the same force and effect as if each provision of the Prime Lease were included in this Sublease, except as otherwise provided in this Sublease. All of the obligations of Tenant under the Prime Lease shall be binding upon Subtenant. All of the obligations of Landlord under the Prime Lease shall inure to the benefit of Subtenant. It is the intent of the parties that, except as otherwise provided in this Sublease, the relationship between Tenant and Subtenant shall be governed by the various provisions of the Prime Lease as if those provisions were included in this Sublease in full, except that the terms "Landlord," "Tenant" and "Lease" as used in the Prime Lease, shall instead refer to, respectively, "Tenant," "Subtenant" and "Sublease."

**RELEASE OF TENANT.** Tenant is hereby released by Subtenant and Landlord from any and all further obligations, which may now or later arise under the Prime Lease or this Sublease. This Sublease shall be construed and effected as a full and complete assignment, without recourse, of Tenant's interests, burdens and benefits arising out of the Prime Lease, and an acceptance of those interests, burdens and benefits by Subtenant.

Furthermore, the Landlord hereby consents to the foregoing Sublease specifically reserving, however, the right of the undersigned to refuse to consent to any future assignment or subletting.

This is a RocketLawyer.com document.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

TENANT

DocuSigned by:
EEA482A702CF4A4...

A-Pro Towing & Recovery, LLC

SUBTENANT

Eric Hager, Principal A+Pro Recovery and Towing, LLC

Jody McIntyre, Principal A+Pro Recovery and Towing, LLC

LANDLORD

Orlando Ochoa

This is a RocketLawyer.com document.

REDACTED COPY - PAGES 67-71 REMOVED

EXHIBIT 1

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# SELLER DISCLOSURE SCHEDULE

REDACTED COPY - PAGES 67-71 REMOVED

Asset Purchase Agreement Page 53 of 77

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# SELLER DISCLOSURE SCHEDULE

This Seller Disclosure Schedule has been prepared in connection with the Asset Purchase Agreement (the "Agreement"), dated as of December 24, 2019, by and between A-Pro Towing & Recovery, LLC, a Texas limited liability company ("**Seller**") and A+ Pro Recovery and Towing LLC, a Texas limited liability company ("**Buyer**"), and constitutes the Disclosure Schedule referred to in the Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

The representations and warranties of Seller in Article IV of the Agreement are made subject to the exceptions and qualifications set forth herein. This Disclosure Schedule is qualified in its entirety by reference to specific provisions of the Agreement, and are not intended to constitute, and shall not be construed as constituting, separate representations or warranties of Seller.

The section numbers used herein refer to the Sections in the Agreement. Headings and subheadings have been inserted herein for convenience of reference only and shall not have the effect of amending or changing the express description hereof as set forth in the Agreement.

The inclusion of any information (including dollar amounts) in any section of this Disclosure Schedule shall not be deemed to be an admission or acknowledgment by Seller that such information is required to be listed in such section or is material to or outside the ordinary course of the business of Seller, nor shall such information be deemed to establish a standard of materiality (and the actual standard of materiality may be higher or lower than the matters disclosed by such information). In addition, matters reflected in this Disclosure Schedule are not necessarily limited to matters required by the Agreement to be reflected in the Disclosure Schedule. Any such additional matters are set forth for informational purposes only and do not necessarily include (and shall not be deemed to include) other matters of a similar nature. The information contained in this Disclosure Schedule is disclosed solely for purposes of the Agreement, and no information contained herein or therein shall be deemed to be an admission by any party hereto to any third party of any matter whatsoever (including, without limitation, any violation of applicable law or breach of contract).

Any information disclosed in this Disclosure Schedule under any section number shall be deemed to be disclosed and incorporated in the Disclosure Schedule under any other section to the extent the relevance of such information to such other section would be reasonably apparent to a reader of such information.

Subject to applicable law, this information is disclosed in confidence for the purposes contemplated in the Agreement and is subject to the confidentiality provisions of the Confidentiality Agreement between Seller and Buyer (as more particularly described in the Agreement).

**SELLER**
**A-PRO TOWING & RECOVERY, LLC**

DocuSigned by:
By: ____________
EEA482A702CF4A4...
Name: Eduardo Pena
Title: Manager

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## SCHEDULE 1.01(b)

**Knowledge of Seller or Seller's Knowledge**

Eduardo Peña

Joanna Peña

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**All other agreements, whether written (including online/electronic) or verbal, for the following accounts:**

**Telephone System**

Vonage Business – 1-866-901-0242
www.my.vonagebusiness.com
A-Pro Towing & Recovery LLC
Acct # 156200

User Name: epena75
Password: Aprotowing,llc

| | |
|---|---|
| Virtual Fax | 1-844-290-6586 |
| A-Pro (Main) | 956-683-6911 |
| Paradise | 956-761-8599 |
| Isla | 956-928-9191 |
| Dispatch | 956-772-4411 |
| Dispatch | 956-772-4646 |

Monthly on 24th $74.96

**Internet Service**

Spectrum

A-Pro Towing & Recovery, LLC
Acct #: 8260 18 021 0285308
Security Code: 1559
User Name: aprotow16
Password: Aprotow,llc1

Monthly on 5th $91.78

**Electricity**

Stream Energy
1-866-447-8732

A-Pro Towing & Recovery, LLC
Acct # 1145836210
ESID # 10032789452013700
Service Address: 1515 Padre Blvd C Bar

Monthly on 30th approximately $250.00

REDACTED COPY - PAGES 67-71 REMOVED

**VTS System Software**

VTS-Systems.com
877-374-7225 Ext. 1

Sales: Nigel
Support: Drew

A-Pro Towing & Recovery, LLC

Monthly Due on 1st $324.90

**Health Insurance**

ehealthinsurance.com

Small Business Health Insurance

Blue Cross Blue Shield of Texas
PPO

Group Name: A-Pro Towing & Recovery, LLC
Plan Type: Medical
Blue Choice Platinum PPO 810-P620CHC

Steve Cody
Lupita Cody

Monthly Due on 1st $1165.00

**Building Lease**

Landlord: Orlando Ochoa

1515 Padre Blvd Suite C
South Padre Island, TX 78597

Monthly Due on 1st $2500.00

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**Commercial Business / Auto Insurance**

Progressive Commercial
1-877-656-7707

Policy # 01385073-0

| | |
|---|---|
| 2005 International Roll Back | VIN# 1HTMMAAM25H104370 |
| 2008 Ford F-450 Wheel Lift | VIN# 1FDXF46R98EA16802 |
| 2011 Ford F-550 Roll Back | VIN# 1FDUF5HY6BEB46069 |
| 2014 Ford F-450 Wheel Lift | VIN# 1FDUF4HY0EEB37561 |

Monthly $2197.00
Annual Policy Premium. $20,514.00

**Texas Department Licensing Regulation (TDLR)**

512-463-6599

A-Pro Towing & Recovery, LLC
1515 Padre Blvd Suite C
South Padre Island, TX 78597

**Tow Company**

**A-Pro Towing & Recovery, LLC**
**DBA Paradise Towing & Recovery / Isla Towing**

| | |
|---|---|
| TDLR License # 006525075C | (2005 International, 2008 Ford F-450) |
| TDLR License # 006501877C | (2011 Ford F-550, 2014 Ford F-450) |

**Vehicle Storage Facility**

**A-Pro Towing & Recovery, LLC**

TDLR License # 0651197VSF

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## SCHEDULE 2.01(e)

**Tangible Personal Property**

**Vehicles*:**

1. 2008 Ford F450 wheel lift (white)
   Jerr-Dan Wheel Lift Bed
   No Additional Equipment
   Value $22,000.00

2. 2014 F450 wheel lift (Red)
   Dynamic Wheel Lift Bed
   No Additional Equipment
   Value $40,000.00

3. 2011 Ford F550 Roll Back (Red)
   Jerr-Dan Aluminum Bed
   No Additional Equipment
   Value: $42,000.00

4. 2005 International Roll Back (Black)
   Jerr-Dan Steel Bed
   No Additional Equipment
   Value: $22,000.00

5. 1989 American General Humvee M-998 (Silver)
   No Additional Equipment
   Value: $40,000.00

***Titles to the vehicles listed above will be mailed to Buyer and will be subject to the Security Agreement and UCC-1 Financing Statement. The values set forth above are subject to annual depreciation in accordance with the Vehicle Depreciation Schedule below. The parties acknowledge that some or all of the tow trucks (vehicles #1 through #4) are currently being serviced and shall be delivered in operable condition on or before January 1, 2020.**

**All other tangible personal property located at 1515 Padre Blvd., South Padre Island, TX as of the date hereof, including, without limitation, any and all equipment, office electronics, fixtures, and inventory.**

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# Vehicle Depreciation Schedule

## 10% Depreciation Per Year

| | 2008 F450 Wheel Lift | 2014 F450 Wheel Lift | 2011 F550 Rollback | 2005 INT. Rollback | 1989 AM General HMMWV M-998 |
|---|---|---|---|---|---|
| 2020 | $22,000.00 | $40,000.00 | $42,000.00 | $22,000.00 | $40,000.00 |
| 2021 | $19,800.00 | $36,000.00 | $37,800.00 | $19,800.00 | $36,000.00 |
| 2022 | $17,820.00 | $32,400.00 | $34,020.00 | $17,820.00 | $32,400.00 |
| 2023 | $16,038.00 | $29,160.00 | $30,618.00 | $16,038.00 | $29,160.00 |
| 2024 | $14,434.20 | $26,244.00 | $27,556.20 | $14,434.20 | $26,244.00 |
| 2025 | $12,990.78 | $23,619.60 | $24,800.58 | $12,990.78 | $23,619.60 |
| 2026 | $11,691.70 | $21,257.64 | $23,320.52 | $11,691.70 | $21,257.64 |
| 2027 | $10,522.53 | $19,131.88 | $20,088.47 | $10,522.53 | $19,131.88 |
| 2028 | $9,470.28 | $17,218.69 | $18,079.62 | $9,470.28 | $17,218.69 |
| 2029 | $8,523.25 | $15,496.82 | $16,271.66 | $8,523.25 | $15,496.82 |
| 2030 | $7,670.93 | $13,947.14 | $14,644.49 | $7,670.93 | $13,947.14 |
| 2031 | $6,903.84 | $12,552.43 | $13,180.04 | $6,903.84 | $12,552.43 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## SCHEDULE 2.01(g)

**Permits**

1. Local operating permits
2. Texas Department of Licensing and Regulation:
    a. 006525075C
    b. 006501877C
    c. 0651197VSF

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# SCHEDULE 2.01(k)

## DBAs

1. Paradise Towing & Recovery

    a. Buyer to file new State of Texas Assumed Name Certificate

    b. Cameron County, Texas Assumed Name Certificate to be withdrawn by Seller within thirty (30) days after the Closing Date.

    c. Name listed as DBA under Seller's TDLR certificates. Buyer to list as DBA on its TDLR certificates.

2. Isla Towing

    a. Buyer to file new State of Texas Assumed Name Certificate

    b. Name listed as DBA under Seller's TDLR certificates. Buyer to list as DBA on its TDLR certificates.

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**SCHEDULE 4.04**

**Financial Statements (Sales Reports)**

## Sales Report

Reported on Dec 10, 2019 11:38 AM MST
Jan 01, 2019 12:00 AM – Dec 10, 2019 11:38 AM
All Employees
All Devices

| SALES | |
|---|---|
| **Gross Sales** | **$232,883.87** |
| Returns | ($708.30) |
| Discounts & Comps | $0.00 |
| **Net Sales** | **$232,175.57** |
| Tax | $10,499.88 |
| Tips | $0.00 |
| Gift Card Sales | $0.00 |
| Refunds by Amount | $0.00 |
| **Total** | **$242,675.45** |

| PAYMENTS | |
|---|---|
| **Total Collected** | **$242,675.45** |
| Cash × 53 | $8,485.99 |
| Card × 691 | $234,189.46 |
| Gift Card | $0.00 |
| Other | $0.00 |
| Fees | ($6,488.87) |
| **Net Total** | **$236,186.58** |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## CATEGORY SALES

| | |
|---|---|
| Special Work × 2 | $225.00 |
| Uncategorized × 684 | $232,658.87 |

## ITEM SALES

| | |
|---|---|
| Final Payment On Jeep Liberty × 1 | $250.00 |
| Regular × 1 | $250.00 |
| Lock Out × 1 | $65.00 |
| Regular × 1 | $65.00 |
| Steam Clean Vehicle With Mud Off Carpet And Seats × 1 | $160.00 |
| Regular × 1 | $160.00 |
| Custom Amount × 683 | $232,408.87 |
| No description × 683 | $232,408.87 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# Sales Report

Reported on Dec 10, 2019 11:38 AM MST

Jan 01, 2018 12:00 AM – Dec 31, 2018 11:59 PM

All Employees

All Devices

## SALES

| | |
|---|---|
| **Gross Sales** | **$378,451.09** |
| Returns | ($2,347.51) |
| Discounts & Comps | $0.00 |
| **Net Sales** | **$376,103.58** |
| Tax | $17,579.66 |
| Tips | $0.00 |
| Gift Card Sales | $0.00 |
| Refunds by Amount | ($90.00) |
| **Total** | **$393,593.24** |

## PAYMENTS

| | |
|---|---|
| **Total Collected** | **$393,593.24** |
| Cash × 19 | $2,762.18 |
| Card × 1371 | $390,831.06 |
| Gift Card | $0.00 |
| Other | $0.00 |
| Fees | ($11,296.62) |
| **Net Total** | **$382,296.62** |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**CATEGORY SALES**

| | |
|---|---|
| Uncategorized × 1361 | $378,451.09 |

**ITEM SALES**

| | |
|---|---|
| Custom Amount × 1361 | $378,451.09 |
| No description × 1361 | $378,451.09 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# Sales Report

Reported on Dec 10, 2019 11:37 AM MST
Jan 01, 2017 12:00 AM – Dec 31, 2017 11:59 PM
All Employees
All Devices

| SALES | |
|---|---|
| **Gross Sales** | **$289,380.06** |
| Returns | ($899.16) |
| Discounts & Comps | $0.00 |
| **Net Sales** | **$288,480.90** |
| Tax | $5,438.65 |
| Tips | $0.00 |
| Gift Card Sales | $0.00 |
| Refunds by Amount | ($584.36) |
| **Total** | **$293,335.19** |

| PAYMENTS | |
|---|---|
| **Total Collected** | **$293,335.19** |
| Cash × 11 | $1,685.00 |
| Card × 934 | $291,650.19 |
| Gift Card | $0.00 |
| Other | $0.00 |
| Fees | ($8,999.00) |
| **Net Total** | **$284,336.19** |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

**CATEGORY SALES**

| | |
|---|---|
| Uncategorized × 945 | $289,380.06 |

**ITEM SALES**

| | |
|---|---|
| Custom Amount × 1 | $250.00 |
| Regular × 1 | $250.00 |
| Manual Labor × 1 | $250.00 |
| Regular × 1 | $250.00 |
| Custom Amount × 943 | $288,880.06 |
| No description × 943 | $288,880.06 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

# Sales Report

Reported on Dec 10, 2019 11:45 AM MST

Jan 01, 2016 12:00 AM – Dec 31, 2016 11:59 PM

All Employees

All Devices

| SALES | |
|---|---|
| **Gross Sales** | **$79,023.13** |
| Returns | ($1,278.30) |
| Discounts & Comps | $0.00 |
| **Net Sales** | **$77,744.83** |
| Tax | $972.39 |
| Tips | $0.00 |
| Gift Card Sales | $0.00 |
| Refunds by Amount | $0.00 |
| **Total** | **$78,717.22** |

| PAYMENTS | |
|---|---|
| **Total Collected** | **$78,717.22** |
| Cash × 13 | $1,362.47 |
| Card × 283 | $77,354.75 |
| Gift Card | $0.00 |
| Other | $0.00 |
| Fees | ($2,492.75) |
| **Net Total** | **$76,224.47** |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## CATEGORY SALES

| | |
|---|---|
| Uncategorized × 293 | $79,023.13 |

## ITEM SALES

| | |
|---|---|
| Custom Amount × 293 | $79,023.13 |
| No description × 293 | $79,023.13 |

REDACTED COPY - PAGES 67-71 REMOVED

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## SCHEDULE 4.09(b)

**Leased Real Property & Leases**

1. Lease Real Property: Approximately 2,500 sq. ft. located 1515 Padre Blvd., Unit C, South Padre Island, Texas 78597.
2. Lease: Lease Agreement between Orlando Ochoa (landlord) and Seller (tenant), dated January 01, 2016

REDACTED COPY - PAGES 67-71 REMOVED

Case 22-10132 Claim 2-Part 15-1 Filed 11/09/22 B Desc 07/15/23 Exhibit Page 86 of 105
EXHIBIT 1

DocuSign Envelope ID: 5E0D598A-84EE-4495-B11C-8E70968AADB7

## SCHEDULE 4.10(a)

**Intellectual Property Assets**

1. Website: http://www.aprotowing.com
2. Logos:

A-PRO TOWING & RECOVERY
A-PRO TOWING & RECOVERY

ISLA TOWING
"Let's Hook Up"

Paradise Towing
"One call and you're hooked"

Asset Purchase Agreement
Page 77 of 77

REDACTED COPY - PAGES 67-71 REMOVED

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
The Jason Rios Law Firm, PLLC 5123752212

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
The Jason Rios Law Firm, PLLC
222 N Expressway
Suite 130
Brownsville, TX 78521
USA

**FILING NUMBER:** 20-0013295042
**FILING DATE:** 04/08/2020 06:34 PM
**DOCUMENT NUMBER:** 962155460002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: **A+ Pro Recovery and Towing LLC**

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2216 Padre Blvd B-458 | South Padre Island | TX | 78597 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: **A-Pro Towing & Recovery, LLC**

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2216 Padre Blvd B-185 | South Padre Island | TX | 78597 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The following properties, assets, and rights of the Debtor, wherever located, whether the Debtor now has or hereafter acquires an ownership or other interest or power to transfer, and all proceeds and products thereof, and all books and records relating thereto: all personal and fixture property of every kind and nature including all goods (including inventory, vehicles, equipment, and any accessions thereto), instruments (including promissory notes), documents (whether tangible or electronic), accounts, chattel paper (whether tangible or electronic), money, deposit accounts, letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, supporting obligations, and other contracts rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles (including all payment intangibles).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

EXHIBIT 2

FILED 8/16/2022 2:13 PM
2020-DCL-03294 / 67331229
LAURA PEREZ-REYES
Cameron County District Clerk
By Viviana Fuentes Deputy Clerk

**NO. 2020-DCL-03294**

| | | |
|---|---|---|
| **EDUARDO PEÑA AND JOANNA PEÑA, Individually, and Derivatively on Behalf of A- Pro Towing and Recovery, LLC Counterpetitioners,** | § | **IN THE DISTRICT COURT OF** |
| **V.** | § | |
| **CASTINE MCILHARGEY, JODY MCINTYRE, Individually, and Derivatively on behalf of A+ PRO RECOVERY AND TOWING, LLC, Counterrespondents.** | § | **CAMERON COUNTY, TEXAS** |
| **V.** | § | |
| **ERIK M. HAGER Cross-Claimant, Defendant** | § | **107TH JUDICIAL DISTRICT** |

**COUNTERPETITIONERS' SECOND SUPPLEMENTAL COUNTER-PETITION AND CROSS-CLAIM**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Eduardo Peña and Joanna Peña, Individually, and Derivatively on behalf of A- Pro Towing & Recovery, LLC and A- Pro Towing & Recovery, LLC, hereinafter referred to as Counterpetitioners, complaining of and about Castine McIlhargey, Jody McIntyre, A+ Pro Recovery and Towing, LLC, hereinafter called Counterrespondents, and Cross-Claimant, Defendant, Erik M. Hager, and for cause of actions show unto the Court the following:

**DISCOVERY CONTROL PLAN LEVEL**

1. Counterpetitioners intend that discovery be conducted under Discovery Level 2, however, requests a modified discovery plan to allow additional time for depositions, pursuant to Tex. R. Civ. P. 190.3(b)(2).

2. Alternatively, Counterpetitioners, based on the intensity and complexity of the

EXHIBIT 3

litigation, and the number of parties involved, respectfully request this Honorable Court provide a court-ordered discovery control plan to be conducted under Discovery Level 3.

**PARTIES AND SERVICE**

4. Counterpetitioner, Eduardo Peña, is an Individual who may be served through the undersigned counsel. Mr. Pena is the manager of A- Pro Towing & Recovery, LLC, lawfully formed under the laws of the State of Texas and registered with the Texas Secretary of State.

5. The last three numbers of Eduardo Peña's driver's license number are 874. The last three numbers of Eduardo Peña's social security number are 533.

6. Counterpetitioner, Joanna Peña, is an Individual who may be served through the undersigned counsel. Mrs. Pena is the owner, sole member, of A- Pro Towing & Recovery, LLC, lawfully formed under the laws of the State of Texas and registered with the Texas Secretary of State.

7. The last three numbers of Joanna Peña's driver's license number are 541. The last three numbers of Joanna Peña's social security number are 928.

8. Counterpetitioner, A- Pro Towing & Recovery, LLC is a limited liability corporation formed under the laws of the State of Texas and may be served through the undersigned counsel.

9. Counterrespondent Castine McIlhargey, an Individual who is a resident of Texas, may be served at 2216 Padre Blvd., Suite B-453, South Padre Island, TX 78597. Service of said Defendant as described above can be effected by personal delivery.

10. Counterrespondent Jody McIntyre, an Individual who is a resident of Texas, may be served at 2216 Padre Blvd., Suite B-453, South Padre Island, TX 78597. Service of said Defendant as described above can be effected by personal delivery.

Case 22-10132 Claim 2 Part 4 Filed 11/09/22 Desc Page 3 of 10

11. Cross-Claimant, Defendant, Erik M. Hager, Individual who is a resident of Texas, may be served by and through his attorney, Hon. Francisco J. Orozco Jr., who has agreed to accept service at Sanchez, Whittington & Wood, LLC, 3505 Boca Chica Blvd, Ste 100, Brownsville, TX 78521. Service of said Defendant as described above can be effected by electronic delivery.

12. Counterrespondent A+ Pro Recovery And Towing, LLC, is a limited liability corporation formed under the laws of the State of Texas and its principal place of business is 4812 Padre Blvd., Suite C, South Padre Island, Texas 78597, in Cameron County, Texas.

**JURISDICTION AND VENUE**

13. The subject matter in controversy is within the jurisdictional limits of this court.

14. Counterpetitioners seek:

a. monetary relief over $1,000,000.

15. This court has jurisdiction over the parties because Counterrespondents are Texas residents and initiated this lawsuit in Cameron County, therefore subjecting themselves to personal jurisdiction of this court.

16. Venue is proper in this cause, pursuant to T.C.P.R.C. 15.002(a)(1), as all or a substantial part of the events giving rise to this lawsuit occurred in Cameron County.

**FACTUAL ALLEGATIONS**

17. On December 24, 2019, A- Pro Towing and Recovery, LLC entered into a written Asset Purchase Agreement, contract with Jody McIntyre and Eric M. Hager. Based on the unanimous written consent of the sole member of A- Pro Towing & Recovery, LLC (hereinafter, "A- Pro Towing"), Joanna Pena, the sole member of "A- Pro Towing," gave consent and authorization to Eduardo Pena to act as the manager of the company and enter into the December

EXHIBIT 3

24, 2019 Asset Purchase Agreement. The Asset Purchase Agreement provided that Counterrespondent and Cross-Claimant, Defendant would purchase Counterpetitioners' business, "A- Pro Towing," for $1,754,000.00, with an initial down payment of $25,000.00 made on January 1, 2020 and following installment payments of $8,500.00 each, with the first payment due on January 1, 2020 and continuing on the 1st of each month until the said amount plus accrued interest has been paid off. Additionally, a $20,000.00 payment will be made by Counterrespondent, Cross-Claimant, Defendant, once every three months, starting on March 1, 2020, along with the $8,500.00 payment paid in the corresponding month, until the said amount plus accrued interest has been paid off ("the Asset Purchase Agreement"). Unfortunately, at the time of the initial filing and even this present one, Plaintiffs have not made full payment for the month of July, 2020; Plaintiffs have not made any payment for the month of August, 2020. A copy of the Asset Purchase Agreement is attached as Exhibit A-2 in Plaintiffs' Original Petition and Application for Temporary Restraining Order, on file with this Honorable Court, and incorporated by reference.

18. In reliance of Counterrespondents' and Cross-Claimant, Defendants promised to follow through with the agreed payment plan, as stated above and identified in the Asset Purchase Agreement, Counterpetitioners shall sell, assign, transfer, convey, and deliver Counterpetitioners' right, title, and interest in, to and under their business, "A- Pro Towing and Recovery, LLC," to Counterrespondent and Cross-Claimant, Defendants.

19. The action taken by the Counterpetitioners was reasonable and foreseeable in light of the promise made by Counterrespondent and Cross-Claimant and Defendants.

**BREACH OF CONTRACT**

20. Counterpetitioners incorporate by reference the allegations set forth above as if

EXHIBIT 3

the same were fully set forth herein.

21. The contractual obligations of Eduardo Peña and Joanna Peña, Individually, and Derivatively on behalf of A- Pro Towing and Recovery, LLC have been fully performed. They transferred over all assets covered by the Asset Purchase Agreement to Counterrespondent A+ Pro Recovery And Towing, LLC.

22. Counterrespondent and Cross-Claimant, Defendant have failed to perform their contractual obligations, specifically, defaulting on January 1, 2020 on the agreed payment plan as identified in the Asset Purchase Agreement. Subsequent to the initial down-payment, Counterrespondent and Cross-Claimant, Defendant failed to timely make each of the requisite payments as established in the Asset Purchase Agreement. Counterrespondent and Cross-Claimant, at the date of this filing, continue to be in default on their payment plan, according to the Asset Purchase Agreement. As such, the Counterrespondent and Cross-Claimant, Defendant have unclean hands.

23. Counterrespondent's breach of contract described hereinabove has injured Counterpetitioners, entitling Counterpetitioners to damages as set forth in the contract.

**FIRST CAUSE OF ACTION: PROMISSORY ESTOPPEL**

24. Counterpetitioners incorporate by reference the factual allegations contained in the preceding paragraphs. In the alternative, Counterpetitioners seek the recovery of property conveyed to Counterrespondents and Cross-Claimant, Defendant in detrimental reliance on the promise of the Counterrespondents.

**SECOND CAUSE OF ACTION: COMMON LAW FRAUD**

25. Counterpetitioner herby incorporates and adopts the factual background and/or contentions set forth in the forgoing paragraphs.

26. Counterrespondent Mcyntire knowingly represented false, deceitful, or with reckless disregard to the truth that Counterpetitioners would be paid as per their Asset Purchase Agreement.

27. This conduct is evidenced by Counterrespondent's defaulting within the first payment and subsequent payments to date, along with his simultaneous forgeries of signatures on alleged contractual documents and vehicle title documents. Based on Counterrespondent's initial and continuing conduct, it is clear Counterrespondent never had the intent to follow through with the Asset Purchase Agreement.

28. As a direct result of Counterrespondent's deceitful and fraudulent actions, behavior, conduct, and breach of Asset Purchase Agreement, Counterpetitioners seek to recover all relief to which they are entitled under the law.

**THIRD CAUSE OF ACTION: CONVERSION**

29. Counterpetitioner herby incorporates and adopts the factual background and/or contentions set forth in the forgoing paragraphs.

30. Counterpetitioners owned, possessed and had the right to immediate possession of multiple items of property, the property was personal property and counterrespondent has wrongfully exercised dominion or control over the property, including but not limited to, vehicles, company assets, bank accounts, and/or d/b/a's, and because of this conduct, the counterpetitioners have suffered injury.

31. Based on Counterrespondents' conduct and unlawfully acquiring Counterpetitioners' property, and as a direct result, counterpetitioner seeks to recover all relief to which he is entitled under the law.

**DAMAGES**

32. Counterpetitioners have sustained damages in excess of this Court's jurisdictional

EXHIBIT 3

minimum, as a result of the actions and/or omissions of Counterrespondents described hereinabove, including, but not limited to:

a. Liquidated damages under the terms of the contract, specifically, the current value of seven one-month payments ($59,000.00), two three-month period payment ($40,000.00), seven months of accrued interest ($30,106.92), and the value of future payments and accrued interest ($1,921,503.49), totaling **$2,050,610.41**; and

b. Consequential damages of $682,597.00 per year since the breach, as the average lost yearly revenue stemming from Counterrespondents interruption and refusal to turn over Counterpetitioner's business.

**OTHER RELIEF REQUESTED**

33. Return of Property: Counterpetitioners request that the Court enter an order requiring Counterrespondents, Jody McIntyre and Castine Mcilhargey to return the following property to Counterpetitioners, as completely set out in the Asset Purchase Agreement and full incorporated herein:

1) The Business: A-Pro Towing and Recovery, LLC
   a) all accounts or notes receivable of the Business;
   b) all inventory, finished goods, raw materials, work in progress, packing, supplies, parts, and other inventories of the Business;
   c) all Contracts set forth on Section 2.01(c) of the Disclosure Schedule and the Leases set forth on Section 4.09(b) of the Disclosure Schedule;
   d) all Intellectual Property Assets as set forth on Section 4.10(a) of the Disclosure Schedule;
   e) all furniture, fixtures, vehicles, equipment, supplies, and other tangible

EXHIBIT 3

personal property of the Business listed on Section 2.01(e) of the Disclosure Schedule;

f) all Leased Real Property;

g) all Permits listed on Section 2.01(g) of the Disclosure Schedule, but only to the extent such Permits may be transferred under applicable Law;

h) all prepaid expenses, credits, advance payments, security, deposits, charges, sums, and fees to the extent related to any Purchased Assets;

i) all of Counterpetitioners' rights under warranties, indemnities, and all similar rights against third parties to the extend related to any Purchased Assets;

j) originals, or where not available, copies, of all available books and records, vehicle and equipment files, customer lists, price lists, supplier lists that exclusively relate to the Business or the Purchased Asset, other than books and records set forth in Section 2.02(d);

k) the d/b/a's as more particularly described in Section 2.01(k) of the Disclosure Schedule; and

l) all goodwill associated with any of the assets described in the foregoing clauses.

## ATTORNEY'S FEES

34. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Counterpetitioners herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## ALTERNATIVE ALLEGATIONS

35. Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of pleadings, allegations in this petition are made in the alternative.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Counterpetitioners, Eduardo Peña and Joanna Peña, Individually, and Derivatively on behalf of A- Pro Towing and Recovery, LLC, and A-Pro Towing and Recovery LLC, individually, respectfully pray that the Counterrespondents and Cross-Claimant, Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Counterpetitioners against Counterrespondents, Castine McIlhargey and Jody McIntyre, A+ Pro Recovery and Towing, LLC and Cross-Claimant, Defendant, Erik M. Hager, damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Counterpetitioners may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
777 East Harrison Street
Brownsville, Texas 78520
Telephone No.: (956) 541-3820
Facsimile No.: (956) 541-7694
E-Mail: admin@gamezlawoffices.com

By: */s/ Ernesto Gamez Jr.*
**Ernesto Gamez Jr.**
Texas Bar No. 07606600

Erin E. Gamez
Texas Bar No. 24093469

Virginia I. Hermosa
Texas Bar No. 24002264

**Attorneys for Counterpetitioners Eduardo Peña and Joanna Peña Individually, and Derivatively on behalf of A- Pro Towing and Recovery, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on this 16th **day of August, 2022** the foregoing Second Supplemental Counter Petition was served via electronic filing services in accordance with the Texas Rules of Civil Procedure and via electronic mail upon the following counsel of record:

**Francisco Orozco Jr.**
forozco@southtexaslegal.com
**Travis Bence**
travisbence@gmail.com
**Castine McIlhargey**
castine@spi-tow.com
**Jody McIntyre**
jody@spi-tow.com
**A+ Pro Recovery and Towing LLC**
aprtl@spi-tow.com

*/s/ Ernesto Gamez, Jr.*
ERNESTO GAMEZ, JR.

EXHIBIT 3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: Castine Mcilhargey

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Travis Bence | | travisbence@gmail.com | 8/16/2022 2:13:46 PM | SENT |
| Castine Mcilhargey | | castine@spi-tow.com | 8/16/2022 2:13:46 PM | SENT |

EXHIBIT 3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: Jody Mcintyre

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Jody McIntyre | | jody@spi-tow.com | 8/16/2022 2:13:46 PM | SENT |

EXHIBIT 3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: Castine Mcilhargey And Jody Mcintrye Derivatively On Behalf Of A+ Pro Recovery And Towing LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| A+ Pro Management | | APRTL@spi-tow.com | 8/16/2022 2:13:46 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: Jason Rios

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Travis Bence | | travisbence@gmail.com | 8/16/2022 2:13:46 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: ErikM.Hager

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Francisco J.Orozco | | forozco@southtexaslegal.com | 8/16/2022 2:13:46 PM | SENT |

EXHIBIT 3

Case 22-10132 Claim 2 Part 4 Filed 11/09/22 Desc Exhibit Page 103 of 105

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Francisco Orozco | 24088162 | forozco@southtexaslegal.com | 8/16/2022 2:13:46 PM | SENT |
| Travis Lee Bence | 24029441 | TravisBence@gmail.com | 8/16/2022 2:13:46 PM | SENT |
| Ernest Gamez | 7606600 | ernestogamezjr@gamezlawoffices.com | 8/16/2022 2:13:46 PM | SENT |
| Ana Hernandez | | ahernandez@southtexaslegal.com | 8/16/2022 2:13:46 PM | SENT |
| Gracie Garza | | gracie.garza@roystonlaw.com | 8/16/2022 2:13:46 PM | SENT |
| Rachel Kram | | rachelkramcsr@yahoo.com | 8/16/2022 2:13:46 PM | SENT |
| JoAnna Trevino | | fifth.region@yahoo.com | 8/16/2022 2:13:46 PM | SENT |

EXHIBIT 3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: Eduardo Pena

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Daniel Goldberg | | DJG@lawgoldberg.com | 8/16/2022 2:13:46 PM | SENT |
| Katia Rivera Reyna | | katia@lawgoldberg.com | 8/16/2022 2:13:46 PM | SENT |
| Ernesto Gamez | | admin@gamezlawoffices.com | 8/16/2022 2:13:46 PM | SENT |
| Daniel JGoldberg | | DJG@lawgoldberg.com | 8/16/2022 2:13:46 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ernesto Gamez, Jr.
Bar No. 7606600
admin@gamezlawoffices.com
Envelope ID: 67331229
Status as of 8/17/2022 8:43 AM CST

Associated Case Party: Joanna Pena

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Daniel JGoldberg | | DJG@lawgoldberg.com | 8/16/2022 2:13:46 PM | SENT |
| Ernesto Gamez | | admin@gamezlawoffices.com | 8/16/2022 2:13:46 PM | SENT |

EXHIBIT 3